BANKS, Justice,
for the Court:
The sole question for resolution in this case is whether the trial court deprived Green of a fair trial by removing a juror, who came forth with an ambiguous concern about his continued service. We hold that, because the juror felt compelled to inform the court of his concern and because the exact nature of that concern was not readily apparent to the court or counsel, or readily ascertainable from the record, there was no abuse of discretion in removing the juror, despite his assurances that he could be fair and impartial.
I.
On April 15, 1992, the Grand Jury of Bolivar County, Second Judicial District, returned an indictment against Green, charging him with the armed robbery of Danny Sivley in a convenience store holdup. Green was charged as an habitual offender. He was tried, found guilty and thereafter sentenced to thirty-eight years imprisonment, without the possibility of parole or probation. Green prosecutes this appeal asserting a single error.
II.
Green contends that the trial court erred in excusing a juror and that he was prejudiced because “the removal of an educated, fair and impartial juror ... resulted in a jury that included an alternate who was presumably less attentive because she did not expect to participate in jury deliberations.” Conversely, the State argues that “given the confusing nature of the testimony offered by the juror, it certainly seems that this was a matter falling squarely within the sound discretion of the court.” Both Green and the State point to Myers v. State, 565 So.2d 554 (Miss.1990), to support their contentions. Their reliance is misplaced. Although Myers speaks to the discretion and duty of the court to remove jurors when they become disqualified, it provides little guidance when applied to the facts in this case.
The juror’s removal was precipitated by the following colloquy:
BY THE COURT: And, of course, there will be no rebuttal. I have a note from one of the jurors, Leroy Byas.
BY MR. ATKINSON: That’s juror No. 12.
BY THE COURT: He said: “I am recall(sic) something from listening to the testimony. Is it proper for me to stay on the jury?” It is addressed to Judge Hatcher, handed to me by the bailiff. Apparently, he has some question or something has come to him that may disqualify him.
*861 BY MR. MELLEN: May I make a comment? If he had stated during voir dire by the Court that he had heard something about this case, that would not disqualify him, necessarily. It probably wouldn’t. I think the Supreme Court has adamantly stayed with the opinion that a defendant is not entitled to an ignorant jury. Well, because of that he can know something and still be a qualified juror. And I just hate to see him shifted around, so I suggest that he come in with us here and you just question him.
BY THE COURT: Well, that’s why I submitted it to you for a comment. We’ll just see what it is that is bothering him.
BY MR. ATKINSON: It is my understanding, and it is along the same lines that Mr. Mellen is saying, no matter what a person knows about a case, I think the pivotal question is whether or not it would affect the outcome of him sitting on — whether it would affect him sitting on the jury. And I think Mr. Byas will be candid enough with the Court and I anticipate that if he does know something he is going to say that it would not affect him.
JUROR NO. 12, MR. LEROY BYAS IS IN CHAMBERS.
BY THE COURT: Mr. Byas, we have your note.
BY JUROR BYAS: I was sitting there and I was, you know, just wanting to be fair. I hadn’t talked to anybody. But I was just recalling some things and I just wanted to ask you, should I continue to sit on this jury. But I can be fair now.
BY THE COURT: Well, I don’t know what it is that you recall.
BY JUROR BYAS: Well, let me just name some things. About this Augusta kid, see, I am a principal. I taught school, the Augusta kid. And when I saw that tape and I know the Augusta kid have those things. He acts a little funny, you know, and this is one of the things they said. And I haven’t really observed him, but the hand thing that came up. And I was noticing on that pad — I might be wrong, but I don’t thing (sic) he was writing anything, you know. But I was just trying to be fair and what have you because I know you would want to hear it. But I was just sitting there observing him writing at the top and bottom.
BY THE COURT: Observing who, who are you talking about?
BY JUROR BYAS: the — (indicating)
BY THE COURT: The defendant?
BY JUROR BYAS: Yes, sir, the defendant here. And the thing came up, too, about this in the paper, and I read the paper sometime ago. I noticed Kansas City and what have you. If I am not mistaken, I believe it was something else in the paper about that sometime back. But I am willing to serve. I don’t have any problem with that.
BY THE COURT: Well, only you can answer the question: Do you feel that you can be fair and impartial?
BY JUROR BYAS: I can be fair. I can be fair. I don’t have a problem with that.
BY THE COURT: And the things that you have mentioned, you don’t think will interfere with your being fair and impartial?
BY JUROR BYAS: No, sir, I don’t think it will interfere, but I just wanted to share this with you all. Really, like I said, it came when he was writing. If I am not mistaken, I don’t know whether he was writing anything or not — with the left hand, right hand thing. So I was just sitting up there observing, and I know the Augusta kid—
BY MR. ATKINSON: — What kind of Md?
BY MR. BYAS: The Augusta kid. I taught the kid. He wears these sweaters with the hoods all the time. He’s got Jerhi curls. And I also read in the paper about him being into a lot of stuff, you know, for shoplifting (sic) and stuff and what have you. So I pretty much kept up with him because I taught him.
BY THE COURT: What kid are you talking about?
BY MR. MELLEN: Robert Augusta.
BY JUROR BYAS: Robert Augusta.
BY THE COURT: Who is he?
BY MR. ATKINSON: Somebody that has been in trouble here in Bolivar County.
*862 BY JUROR BYAS: Over and over, yes, sir. I know him because I taught him.
BY THE COURT: That doesn’t have anything to do with this case, does it?
BY JUROR BYAS: No, sir. It doesn’t have anything to do with the case. But I was just saying, that was his friend here in Bolivar County, and like I said that stood out. When I saw that tape and saw whoever it was — I don’t know who it was with that things on his head, then it came back to me — that kind of came back to me then.
BY THE COURT: Well, it is still back to you, do you think you can be fair and impartial.
BY JUROR BYAS: Oh, yes, sir, I can be fair. I don’t have problem with that. I can be fair.
BY THE COURT: Do y’all want to ask any questions?
BY MR. ATKINSON: No, sir, I don’t think so.
BY JUROR BYAS: Of course, I haven’t said anything. You instructed me not to. But I just wanted to share that with y’all.
BY MR. ATKINSON: I don’t have any questions Mr. Byas, You (sic) Honor.
BY THE COURT: All right. You can step outside. We will let you know something.
(Juror Byas leaves chambers.)
BY MR. ATKINSON: You (sic) Honor, I hope the Court is not as confused as I am. I got the impression first of all that he thought that maybe (sic) was the Augusta boy that was doing the robbing and then I think he said, naw, he just — the guys that run with this Augusta guy wear the Jerhi curls (sic) with these head nets, but I’m really not sure what the relevance of that was.
BY THE COURT: Well, I am confused, just as you are.
BY MR. ATKINSON: And then he saw the defendant writing at the top of the page and at the bottom of the page. I don’t know whether that was a correlation between this man and that Augusta fellow or whether or not he just heard that the man was left handed and noticed that this guy was writing with his right. Maybe the District Attorney can shed some light on it because I am totally confused.
BY THE COURT: Well, we have alternates for a reason. If there is any confusion, I am waiting to see if either of you want to excuse him.
BY MR. MELLEN: I think he ought to be excused. The same reason that the two of you have expressed. I just don’t know what in the world he was saying.
BY MR. MELLEN: Your Honor, August Hill was somebody I think that Quinton said that the defendant had stayed with at one time. So he is saying, yes, I recognize that and then he — I don’t understand what he was saying.
BY THE COURT: I am thoroughly confused. Do you know what he was saying?
BY MR. ATKINSON: Okay. I think I understand now. Mr. Quinton said in his direct or cross-examination, we think or we have reason to believe that this man was staying at Augusta’s house. And Mr. Byas is saying that Augusta always wore these Baxter caps over his Jerhi curls. Of course, it is 3:30 in the afternoon and I guarantee you I could round up 250 people in Bolivar County that don’t even work at Baxter’s that have Baxter’s caps over their Jerhi curls. But I think that is what Mr. Byas was saying that when he saw the cap — when he saw the tape the second time then he put the Augusta name, that Mr. Quinton said about this man possibly being at Augusta’s house one night.
BY THE COURT: All right. I will ask both of you, do either one of you want the court to excuse him and call the first alternate?
BY MR. MELLEN: Yes, sir.
BY THE COURT: Mr. Mellen has asked that Mr. Byas be excused, do you object?
BY MR. ATKINSON: I object, Your Hon- or. Mr. Byas has been very forthright with the Court and even though he has been confusing, he was tried to tell the Court as best he could whenever he saw this he thought of these things. But he was also very quick to add that he could be fair and *863 impartial and that it would not affect his serving on the case. I think if this question had come up in voir dire, for instance, asked Mr. Byas if he knows the Augusta fellow, he would say, yes. How do you know him and he could told us, or what do you know about him. Even here in chambers he said — would the fact that this person might have stayed at Augusta’s house while he was here in town, would that affect your sitting on the trial of this ease, and his answer would have been in the negative.
BY THE COURT: Well, the juror thought enought (sic) about it that he sent the note in to the Court. We do have two alternates standing by, so I am going to excuse this juror and put alternate number one in place of that juror.
Questions about juror competency are considered against the backdrop of the general principle that a judge is empowered with broad discretion to determine whether a prospective juror can be impartial. Id. at 558. See Burt v. State, 493 So.2d 1325, 1327 (Miss.1986) (“It is well founded that the trial judge has the discretion to excuse potential jurors for cause if the court believes the juror could not try the case impartially.)”
Here, the juror indicated extra-judicial knowledge concerning the person with whom the defendant was living at or near the time of the robbery. His statements were confusing concerning the effect of this knowledge and it is far from clear whether it would affect his verdict. We do know that he felt compelled to make a disclosure and that he somehow related his prior knowledge to evidence in the case. His assurance of fairness notwithstanding, we cannot find an abuse of discretion depriving the defendant of a fair trial. Accordingly, we affirm.
CONVICTION OF ARMED ROBBERY AND SENTENCED AS AN HABITUAL OFFENDER TO THIRTY-EIGHT (38) YEARS AFFIRMED.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, PITTMAN, McRAE, JAMES L. ROBERTS and SMITH, JJ., concur.