858 So.2d 933 (2003)
Tami SAUCIER, Appellant,
v.
CITY OF POPLARVILLE, Appellee.
No. 2002-KM-01873-COA.
Court of Appeals of Mississippi.
November 4, 2003.
*934 Thomas M. Matthews, attorney for appellant.
Nova A. Carroll, Picayune, attorney for appellee.
Before SOUTHWICK, P.J., MYERS and CHANDLER, JJ.
SOUTHWICK, P.J., for the court.
¶ 1. Tami Saucier was convicted of driving under the influence. She appeals arguing that there was no probable cause for the traffic stop nor for the administration of a breath test. She also argues that the evidence did not support that she was under the influence of alcohol. We find no error.

STATEMENT OF FACTS
¶ 2. On the night of November 30, 2001, Saucier was driving on Highway 53 near Poplarville, Mississippi. While on patrol, a Pearl River County sheriff's deputy began to follow her. He observed Saucier increase and decrease her speed and "bump" the centerline. She was driving between fifteen and twenty miles per hour in a thirty-five mile per hour zone. He followed her for about eight miles. As they entered Poplarville, Saucier went into the center lane and jerked her vehicle back into the right lane. The officer contacted the Poplarville Police Department for assistance.
¶ 3. A police officer responded and pulled his vehicle in between the sheriff deputy's vehicle and that of Saucier. He followed her for perhaps three hundred yards. He observed Saucier cross the yellow line into the turn lane and then back into her lane. She was also driving rather slowly. The police officer then stopped Saucier. As he approached Saucier's vehicle, he smelled alcohol coming from inside her vehicle. He then noticed that Saucier's eyes were bloodshot and glassy. He asked her to exit her vehicle. The sheriff's deputy was also present and he saw Saucier sway. Saucier stated that she had been drinking wine earlier at a casino on the Gulf Coast.
¶ 4. Two field sobriety tests were conducted. Saucier did not successfully complete either, so she was asked to submit to an Intoxilizer exam for breath alcohol content. Saucier was transported to the Pearl River County Sheriff's Department for the test. She was unable to complete it. She was arrested and charged with careless driving and driving under the influence of intoxicating liquor. In the Poplarville Municipal Court, Saucier entered a nolo contendere plea. She then appealed her conviction to the Circuit Court of Pearl River County for a trial de novo. Both parties requested a trial without a jury. Saucier was found guilty of driving under the influence, first offense.

DISCUSSION
1. Probable cause for a traffic stop and for administering field sobriety test
¶ 5. Saucier claims that there was no probable cause for the police officer to conduct a traffic stop. The United States Supreme Court has stated that, as a general rule, "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." Whren v. United States, 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). To know whether there was evidence of the offense of careless driving, we examine the statute on that crime:
Any person who drives any vehicle in a careless or imprudent manner, without due regard for the width, grade, curves, corner, traffic and use of the streets and *935 highways and all other attendant circumstances is guilty of careless driving.
Miss.Code Ann. § 63-3-1213 (Rev.1996).
¶ 6. Repeatedly, the vehicle that Saucier was driving crossed over the center line. This is careless driving under the statute. She was driving without due regard for the width and use of the street. This was observed by two law enforcement officers. The officer's observations were sufficient for him to conclude that the traffic violation of careless driving had occurred.
¶ 7. Saucier relies on a precedent that states that a driver allowing his vehicle one time to drift slightly across a lane marker was not an offense under Texas law. Hernandez v. State of Texas, 983 S.W.2d 867, 870 (Tex.Ct.App.1998). The driver was on a five lane highway, and he did not cross over into the lane for oncoming traffic. The court discussed the legislative history of the relevant Texas statute, and found that there was a violation only when a driver "fails to stay within its lane and such movement is not safe or is not made safely." Id. at 871. The failure to prove the unsafe nature of the lane violation is what caused the court to find that no traffic offense had occurred.
¶ 8. We note factual distinctions. First, there was not a one-time and brief drifting across the painted stripe separating lanes as in Hernandez, but a multiple intrusion across the dividing stripe on the highway. The frequency of the failure to maintain the proper lane suggests a greater degree of risk and carelessness. Secondly, Hernandez drifted across the stripe dividing his lane from others going the same direction; Saucier crossed over the centerline into the lane for traffic going the opposite direction. A witness specifically stated that Saucier was drifting into the lane used by oncoming traffic. We do not find Hernandez persuasive as to the resolution of this appeal.
¶ 9. In a factually similar decision, this Court found that a driver who was seen several times permitting his vehicle to cross over into a turning lane (apparently a center lane usable by traffic in each direction) could be found guilty of careless driving. Guerrero v. State, 746 So.2d 940, 943 (Miss.Ct.App.1999).
¶ 10. There was probable cause to believe a traffic offense had been committed. Saucier was properly stopped for further police action.
¶ 11. Saucier also argues that even though she might properly have been stopped, there was not sufficient basis to believe that she was intoxicated. Consequently, she argues that the results of the field sobriety test should be suppressed.
¶ 12. Probable cause to administer a field sobriety test can be the basis of probable cause to arrest and administer a breath test. Young v. City of Brookhaven, 693 So.2d 1355, 1361 (Miss.1997). The record reflects that the officers smelled alcohol, that Saucier's eyes were glassy and bloodshot, that she swayed, and that she could not adequately perform two field sobriety tests. Saucier admitted to drinking at a casino that night. From this, the officer concluded that Saucier was intoxicated. It was not clearly erroneous for the circuit court to conclude there was probable cause to administer the Intoxilizer exam. Saucier was unable to complete this test.
2. Proof of intoxication
¶ 13. Saucier asserts that there is no evidence indicating she was intoxicated. This is the statute that Saucier was found to have violated:
(1) It is unlawful for any person to drive or otherwise operate a vehicle within this state who
*936 (a) is under the influence of intoxicating liquor.
Miss.Code Ann. § 63-11-30(1)(a) (Rev. 1996).
¶ 14. The circuit judge concluded Saucier was intoxicated based on the testimony of the police officer and the sheriff's deputy. This evidence demonstrated that Saucier was driving carelessly, smelled of alcohol, had glassy eyes, swayed, and could not complete two field sobriety tests.
¶ 15. Saucier states that the evidence should be found to be inadequate because of a precedent that rejected the sufficiency of the Horizontal Gaze Nystagmus test as proof of intoxication. Richbourg v. State, 744 So.2d 352, 354 (Miss.Ct.App.1999). That specific test, involving the ability of a person suspected of being intoxicated to follow with his eyes the movement of the officer's hand or finger, is not what was used in this case.
An HGN test is conducted by asking the driver to "cover one eye and focus the other on an objectusually a penheld by the officer at the driver's eye level. As the officer moves the object gradually out of the driver's field of vision he watches the driver's eyeball to detect involuntary jerking. The officer then observes: "(1) the inability of each eye to track movement smoothly; (2) pronounced nystagmus at maximum deviation; and (3) onset of the nystagmus at an angle less than 45 degrees in relation to the center point."
Young v. City of Brookhaven, 693 So.2d 1355, 1359 (Miss.1997).
¶ 16. Saucier received a different test, commonly called a field sobriety test. Saucier was asked to put her feet together. She then was asked to close her eyes and tilt her head back, extending her arms. With her eyes still closed, Saucier was asked to touch the tip of her nose with the index finger, first of one hand and then of the other. She was then given what the officer called a "finger-count" test. It is unclear from the testimony whether other requests were made. The officer stated that she was unable to pass these tests of coordination. Such field sobriety tests have been distinguished from the HGN test. Edwards v. State, 795 So.2d 554, 562-63 (Miss.Ct.App.2001).
¶ 17. Besides just these tests, the officers testified about slurred speech, smell of alcohol, and glazed eyes. The absence of evidence from a successfully administered Intoxilizer test does not prevent proof of intoxication. The evidence available was sufficient for the circuit judge to conclude in fact that Saucier was intoxicated.
¶ 18. THE JUDGMENT OF THE CIRCUIT COURT OF PEARL RIVER COUNTY OF CONVICTION OF DUI FIRST OFFENSE AND SENTENCE OF TWO DAYS IN THE PEARL RIVER COUNTY JAIL, SUSPENDED, AND FINE OF $500 IS AFFIRMED. ALL COSTS ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING, P.J., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.