956 So.2d 997 (2007)
Randall M. SMITH, Appellant
v.
STATE of Mississippi, Appellee.
No. 2005-KA-00681-COA.
Court of Appeals of Mississippi.
February 13, 2007.
Rehearing Denied May 29, 2007.
*999 Dan Anderson McIntosh, Collins, Travis T. Vance, attorneys for appellant.
Office of the Attorney General by W. Daniel Hinchcliff, attorney for appellee.
Before KING, C.J., CHANDLER, BARNES and ROBERTS, JJ.
BARNES, J., for the Court.
¶ 1. Randall M. Smith was convicted on March 2, 2005, of aggravated driving under the influence of intoxicating liquor for his involvement in a vehicular accident which seriously injured the driver and passenger of an oncoming car. He was thereafter sentenced to a term of ten years in the custody of the Mississippi Department of Corrections, with three years to serve and five years of post release supervision.[1] The trial court further ordered Smith to pay a fine of $1,000. Aggrieved by the jury's judgment against him, Smith perfected this appeal, asserting error as follows: (1) the jury's verdict was against the overwhelming weight of the evidence presented at trial; (2) there was insufficient proof of his intoxication at the time of the accident; (3) the court erred by replacing a juror prior to the jury's deliberation; and, (4) it was error to refuse defendant's jury instruction DI-7. Finding no merit in Smith's assignments of error, we affirm.

FACTS AND PROCEDURAL HISTORY
¶ 2. On October 2, 2003, Randall Smith was traveling home in the south-bound lane of Campbell Swamp Road when his pickup truck collided with a north-bound car driven by Crystal Wilkerson. The head-on collision occurred in the north-bound lane  Wilkerson's lawful lane of travel. Wilkerson's four year old son, Chandler, was a passenger in the back seat of her car. As a result of the accident, both Wilkerson and Chandler suffered serious injuries. Wilkerson sustained serious injuries to both knees and suffered a complete break to her femur, requiring a surgically implanted rod in her leg to straighten and hold the two halves of the severed bone together. Chandler sustained a severe laceration to his head and a broken pelvis. Chandler was confined to a wheel chair for approximately one month due to his injuries.
*1000 ¶ 3. Smith was indicted by a grand jury in the Warren County Circuit Court on May 3, 2004, under Mississippi Code Annotated section 63-11-30(5) (Supp.2003), aggravated driving under the influence of intoxicating liquor. The elements of this statutory provision are: (1) intoxication at the time of the accident, (2) negligence by the defendant, which (3) causes death or serious bodily injury to another. Id. After a three-day trial, the jury found Smith guilty of the charge as indicted.
¶ 4. The accident at issue in this case occurred as Smith was traveling south and Wilkerson was traveling north on Campbell Swamp Road, a narrow, country roadway located in rural Warren County. Wilkerson left work for the day at approximately 4:30 p.m., went to pick Chandler up from his grandmother's house, and was on her way to pick up her other two children from daycare when the accident occurred. Wilkerson had just descended a hill and was approaching a sharp curve that curved back to the west. As she neared the curve, Wilkerson encountered a beige Chevrolet approaching in her lane of travel and "fishtailing" as it emerged from the curve. Wilkerson testified that she did not have time to make any attempt at avoiding the impact. After the collision, both vehicles came to rest a few feet from the site of the impact. The location of the impact suggests that Smith had barely emerged from the curve and Wilkerson was just before entering the curve when the two vehicles collided.
¶ 5. There is no dispute that the accident took place in Wilkerson's lawful lane of travel. Smith, however, insists that it was Wilkerson who was initially in his lawful lane of travel. According to Smith's testimony, he entered Wilkerson's lane of travel in an effort to avoid colliding with her car. Smith contends that Wilkerson then crossed back over into her proper lane, and that he then attempted to move his vehicle to the north-bound shoulder of the road, but was unable to do so before the vehicles collided. Smith further testified that he only lacked a few inches from being completely on the road's shoulder. If he had made that final few inches, Smith contends that he would have avoided the accident altogether.
¶ 6. Smith produced three witnesses at trial to corroborate his version of the accident. Two of the witnesses, John Ransom and Dale Wheeler, testified that they were traveling together in the same direction as Smith, and were several car lengths behind when the events leading up to the accident unfolded. Ransom, a passenger in a Ford Bronco driven by Wheeler, testified that he could not see Wilkerson's car prior to the collision. However, Ransom testified further that immediately preceding the impact, Smith veered sharply to the left, consistent with an attempt to avoid an oncoming vehicle. Wheeler's testimony was essentially identical to that of Ransom with respect to how the accident occurred. In addition, both men testified that Smith was traveling at a reasonable rate of speed.
¶ 7. The third witness was Donna Ragland, who testified that she was jogging in the area when she witnessed the accident. Ragland was jogging in the same direction as Wilkerson was traveling, and witnessed the collision from the south  the opposite vantage point than that of Ransom and Wheeler. According to Ragland, Wilkerson's car was in Smith's south-bound lane of travel and was traveling at a high rate of speed as Wilkerson approached the curve, causing Smith to veer sharply to his left, entering the north-bound lane. Wilkerson then moved back to the north-bound lane and collided with Smith's truck. When questioned about how fast she thought Smith was traveling just prior to *1001 the accident, Ragland stated that "he seemed to be driving normal speed." After witnessing the accident and speaking briefly with Ransom and Wheeler as they passed by in the Ford Bronco, Ragland testified that she turned and headed back in the opposite direction.
¶ 8. Despite the apparent seriousness of the accident, Ransom and Wheeler testified that they offered no assistance to either Smith or Wilkerson. Rather, both men testified that after a brief exchange with Smith, an exchange in which Smith assured the two men that he was alright and was going to call 911 on his cell phone, they determined that there was nothing they could do to help. Both men testified that they had been drinking that afternoon, and Wheeler was concerned that if he remained at the accident scene, he might get a DUI. When questioned about why she did not go down to the accident scene, Ragland cited the fact that she is prone to faint at the sight of blood, was wearing running clothes consisting of "very small shorts and a running bra," and was assured by Ransom and Wheeler that 911 had been called. Ragland added that, from her vantage point, she "couldn't see anything that looked that detrimental." Admittedly, neither Ransom, Wheeler, nor Ragland made any attempts to contact emergency personnel after leaving the accident scene.
¶ 9. In addition to conflicting testimony describing how the accident occurred, the jury also heard conflicting evidence regarding Smith's intoxication at the time of the accident. According to Smith, he had been visiting at a friend's house for most of the afternoon prior to the accident. On his way home from this friend's house, Smith stopped at a country store and purchased some Gatorade and a bag of ice. Smith testified that he drank some of the Gatorade out of the bottle, poured some more in a cup and mixed that with vodka, and then mixed some more vodka with the Gatorade that remained in the bottle. When asked how much vodka he had drunk prior to the accident, Smith testified, "Not much." Smith's blood alcohol content ("BAC") immediately after the accident was not ascertained, as the investigating deputies did not administer any field sobriety tests nor did they administer an Intoxilyzer test on Smith. Instead, Smith later consented to having a blood sample drawn to be tested for intoxicating substances.
¶ 10. The test results revealed that Smith's BAC was .20 percent, more than two times the legal limit of .08 percent. See Miss.Code Ann. § 63-11-30(1)(c) (Supp.2003). The record does not reflect the exact time that Smith's blood was drawn and tested; however, Smith signed a consent form approximately one hour and forty-five minutes after the accident took place, so at least this much time had passed. The latest testimonial estimate is that the blood was drawn some three and one-half to four and one-half hours after the accident. The accident occurred at approximately 5:00 p.m. According to the record, the earliest that Smith's blood could have been drawn was 6:45 p.m., and the latest was 9:30 p.m.
¶ 11. Smith agreed to a stipulation of fact with respect to the blood test results, in effect admitting that his BAC was .20 percent at the time his blood was drawn and tested. However, to support his contention that he was not intoxicated at the time of the accident, and to explain how his BAC registered .20 percent several hours after the accident, Smith asserted at trial that he did not drink very much of his vodka-Gatorade mixture prior to the accident but that he continued drinking from his Gatorade bottle after the accident. In fact, Smith even asked Officer Heggins, *1002 one of the deputies investigating the accident, if he could have a drink from his Gatorade bottle, and Heggins consented. Heggins admitted that he allowed Smith to take a single drink from his bottle of Gatorade at the accident scene and that the contents of the bottle were never tested to determine whether it contained any alcohol. However, Heggins testified that other than this single drink from his Gatorade bottle, Smith did not consume anything else after the officer arrived at the accident scene approximately six minutes after receiving the dispatch.
¶ 12. In addition to the blood test which revealed Smith's BAC to be .20 percent several hours after the accident, the prosecution offered the testimony of Officer Heggins, Wilkerson, and assisting motorist John Tompkins to support the contention that Smith was intoxicated at the time of the accident. Officer Heggins testified that Smith smelled of beer when he encountered Smith at the accident scene. Wilkerson testified that Smith smelled strongly of alcohol when Smith first approached her vehicle immediately after the accident. Additionally, Wilkerson testified that when Smith exited his truck, he fell to the ground on his back, waiving his arms and legs about in a similar fashion to what Wilkerson described as "doing like snow angels." Tompkins, a motorist who came upon the accident scene shortly after the collision, testified that he, too, witnessed Smith fall to his back as he attempted to exit the wrecked truck. Tompkins also stated that Smith smelled very strongly of alcohol, and that, in his opinion, Smith was very intoxicated.
¶ 13. At the conclusion of all testimony, Smith's renewed motion for directed verdict was denied. The trial court also denied Smith's "Motion for Judgment Notwithstanding the Verdict (JNOV) or, in the Alternative, for a New Trial" submitted after the jury's verdict finding Smith guilty of aggravated DUI. The trial court subsequently sentenced Smith to a term of ten years in the custody of the Mississippi Department of Corrections, with three years to serve, five years' post release supervision, and a $1,000 fine. Smith timely perfected this appeal, asserting that the trial court erred by refusing his motion for JNOV, or, in the alternative, for a new trial. In this regard, Smith asserts that with respect to the negligence requirement of section 63-11-30(5), the jury's verdict was against the overwhelming weight of the evidence. Smith also insists that there was insufficient proof that he was intoxicated when the accident occurred. Next, Smith argues that the trial court erred when it substituted one of the jurors prior to the beginning of deliberations. Finally, Smith argues that the trial court committed reversible error by refusing one of defendant's jury instructions. Finding no error by the trial court in the proceedings below, we affirm.

DISCUSSION OF THE ISSUES
¶ 14. In order to prove Smith guilty of aggravated DUI under Mississippi Code Annotated section 63-11-30(5), the State was required to prove, beyond a reasonable doubt, that Smith was intoxicated at the time of the accident, and that Smith negligently caused death or serious injury to another. Miss.Code Ann. § 63-11-30(5). Smith asserts that the jury's verdict finding him negligent and intoxicated at the time of the accident was against the overwhelming weight of the evidence. Smith does not challenge the jury's finding with respect to the death or serious injury requirement of section 63-11-30(5). Rather, Smith asserts that the trial court committed reversible error by replacing one of the jurors just before the jury began its deliberations. Smith's final assertion of error is that the trial court erred by refusing *1003 defendant's jury instruction DI-7. We turn now to a discussion of these assignments of error.
I. WHETHER THE JURY'S VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE
¶ 15. Smith contends that the jury's verdict in this case was against the overwhelming weight of the evidence and that the trial court, therefore, erred in denying his motion for a new trial. In particular, Smith insists that the overwhelming weight of the evidence points to his version of how the accident occurred. Accordingly, Smith contends that the weight of the evidence points to Wilkerson  not Smith  as being the negligent cause of the accident in question. We disagree.
¶ 16. On a motion for a new trial, the court sits as a hypothetical thirteenth juror. Amiker v. Drugs For Less, Inc., 796 So.2d 942, 947(¶ 18) (Miss.2000) (quoting United States v. Sinclair, 438 F.2d 50, 51 n. 1 (5th Cir.1971)). "The motion, however, is addressed to the discretion of the court, which should be exercised with caution, and the power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict." Id. On review of a trial court's denial of a motion for new trial, we must view the evidence in a light most favorable to the verdict, and this Court will disturb the decision of the trial court "[o]nly when the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." Herring v. State, 691 So.2d 948, 957 (Miss.1997).
¶ 17. To support his assertion that the jury's verdict was against the overwhelming weight of the evidence, Smith points out inconsistencies in the different accounts given by Crystal Wilkerson of how the accident occurred.[2] Wilkerson was questioned at some length during cross-examination regarding inconsistencies in recited accounts of the accident, accounts which she gave on three separate occasions. Smith also points out that he produced three eyewitnesses who all testified consistently with his version of how the accident occurred.
¶ 18. While we note that there were some discrepancies among Wilkerson's various accounts of the accident, Wilkerson consistently asserted that it was Smith who was initially in the wrong lane of travel as she approached the area where the accident occurred. Furthermore, there were many circumstances surrounding the testimony of Smith's three eyewitnesses that may have created doubt in the jury's minds as to the veracity of their *1004 testimony.[3] It is not for this Court to second guess the jury's resolution of the conflicting testimony, as it is well established that "the jury is the judge of the weight and credibility of testimony and is free to accept or reject all or some of the testimony given by each witness." Howery v. State, 809 So.2d 761, 763(¶ 7) (Miss. Ct.App.2002) (quoting Meshell v. State, 506 So.2d 989, 991 (Miss.1987)). Apparently, the jury chose to believe the State's witness, Wilkerson, in finding Smith guilty of aggravated DUI. The fact that Smith produced corroborating witnesses does not preclude the jury from disregarding the testimony of those witnesses. "The `testimony of a single uncorroborated witness is sufficient to sustain a conviction . . . even though there may be more than one person testifying to the contrary.'" Id. (quoting Williams v. State, 512 So.2d 666, 670 (Miss.1987)).
¶ 19. Wilkerson's testimony was sufficient to establish that Smith was negligent, and that his negligence proximately caused the accident at issue. There was other evidence presented to the jury that could have weighed in favor of the jury's decision, such as the fact that the accident occurred in Wilkerson's lane of travel, and the fact that Smith admitted that he had consumed some alcohol prior to the accident. "As the reviewing court, we cannot and need not determine with exactitude which witness(es) or what testimony the jury believed or disbelieved in arriving at its verdict. It is enough that the conflicting evidence presented a factual dispute for jury resolution." Stephens v. State, 911 So.2d 424, 436(¶38) (Miss.2005) (citing Groseclose v. State, 440 So.2d 297, 300 (Miss.1983)). Whether Smith negligently caused this accident was a disputed issue properly resolved by the jury. The jury's resolution was supported by substantial evidence. Accordingly, the jury's judgment was not against the overwhelming weight of the evidence, and the trial court did not err by refusing to grant a new trial.
II. WHETHER THERE WAS SUFFICIENT PROOF THAT SMITH WAS INTOXICATED AT THE TIME OF THE ACCIDENT
¶ 20. Smith also challenges the jury's judgment on the ground that "proof of intoxication, above Mississippi's legal limit, at the time of the accident, was not proven." Although not couched in terms of sufficiency, or posited in the context of the trial court's denial of his motions for directed verdict and judgment notwithstanding the verdict ("JNOV"), Smith's argument on this issue effectively attacks the sufficiency of the evidence presented at trial. Therefore, we will apply the standard of review applicable to denial of a motion for directed verdict and JNOV.
¶ 21. A motion for JNOV and directed verdict are both challenges to the legal sufficiency of the evidence presented at trial, and the standard of review is identical for both. Seeling v. State, 844 So.2d 439, 443(¶ 8) (Miss.2003). Under this standard, we are required to view all evidence in the light most favorable to the State, and the State is entitled to all favorable inferences that may reasonably be drawn from the evidence. We will reverse and render only where "the facts so considered *1005 point so overwhelmingly in favor of the appellant that reasonable men could not have arrived at a guilty verdict." Where there is substantial evidence of such a nature that fair-minded and reasonable jurors exercising impartial judgment might have reached different conclusions, this Court is compelled to affirm. Id.
¶ 22. At trial, Smith stipulated to the fact that his BAC was .20 at the time his blood was drawn and tested. According to the record, Smith qualified this stipulation only insofar as this was not a stipulation to his BAC at the time of the accident. On appeal, Smith insists on a more limited stipulation, arguing that he merely stipulated to the fact that a blood test was conducted which purported to establish his BAC as .20 at some point after the accident. In this regard, Smith contends that he never stipulated to the fact that the test was accurate, proper, or timely. We find Smith's argument unpersuasive.
¶ 23. Since Smith did not raise this issue before the trial court, he is procedurally barred from raising it now on appeal. See Spicer v. State, 921 So.2d 292, 309(¶ 32) (Miss.2006). Notwithstanding this procedural bar, the record clearly demonstrates that Smith accepted the accuracy of the test results. For example, during argument in support of the renewed "Motion for Directed Verdict," counsel for Smith stated the following: "Even though there is a stipulation as to what the blood alcohol content was some hours later, that stipulation does not include what it was at the time of the accident, itself, and that is what the Court must go on." We note that counsel referred to a stipulation of blood alcohol content, not to a stipulation of blood test results which may or may not have been accurate as he now contends on appeal.
¶ 24. Another indication of Smith's acceptance of the accuracy of the test results is found in the court's ruling on Smith's renewed motion for directed verdict. There, the trial judge stated that "the first stipulation was that his blood-alcohol content was .20 at about an hour and fifteen, thirty minutes after, the accident. . . ." Counsel for Smith expressed disagreement only with the court's time frame, insisting that the exact time Smith's blood was drawn was unknown. Counsel for Smith did not take issue with the court's characterization of this stipulation as a stipulation to Smith's BAC at the time the blood was drawn, and in fact counsel reiterated this point during the colloquy. These excerpts clearly demonstrate that Smith did not refute the accuracy, propriety, or timeliness of the blood test results at trial, and he may not do so for the first time on appeal. Thus, Smith's stipulation was conclusive as to his BAC at the time of the blood test and is "binding on the parties and the court." Crawford v. Butler, 924 So.2d 569, 573(¶ 13) (Miss.Ct.App.2005) (citing Benton v. Harkins, 800 So.2d 1186, 1187(¶ 8) (Miss.Ct.App.2001)). This evidence was properly before the jury, and we must view it, along with all other evidence of Smith's intoxication, in the light most favorable to the State.
¶ 25. Smith contends that the State failed to prove that he was intoxicated at the time of the accident. To support this contention, Smith points to his own testimony at trial that he did not drink very much of his vodka and Gatorade mixture prior to the accident. To explain his .20 BAC several hours after the accident, Smith testified that he continued drinking the vodka and Gatorade mixture after the accident. As fact finder in this case, the jury was free to accept or reject this testimony. Howery, 809 So.2d at 763(¶ 7). Drawing the only reasonable inference that is consistent with the verdict, we must *1006 conclude that the jury chose to reject Smith's explanation.
¶ 26. It is clear that the evidence contained in the record, when viewed in the light most favorable to the State, and reasonable inferences made consistent with the verdict, is sufficient to support the jury's verdict. The testimony of Officer Heggins, Wilkerson, and assisting motorist Tompkins, all of whom encountered Smith at the accident scene shortly after the collision occurred, support the conclusion that Smith was intoxicated at the time of the accident. All three of these witnesses testified that Smith smelled very strongly of alcohol. Wilkerson and Tompkins testified to abnormal behavior by Smith consistent with intoxication. Even Smith's own testimony that he had consumed some alcohol prior to the accident supports this conclusion. Finally, and perhaps most persuasive, given the fact that Smith's BAC was .20 percent several hours after the accident, we find that it would be reasonable for a jury to infer that Smith's BAC was .08 percent or more at the time of the accident.
¶ 27. Smith argues that, in the absence of Intoxilyzer results or other evidence of his BAC shortly after the accident, there was insufficient proof of his intoxication at the time of the accident. In Saucier v. City of Poplarville, 858 So.2d 933, 936(¶ 17) (Miss.Ct.App.2003), we upheld a DUI conviction despite the absence of evidence from a successfully administered Intoxilyzer test. There, we found the officer's testimony regarding the defendant's failure of field sobriety tests, slurred speech, smell of alcohol, and glazed eyes was sufficient for the circuit judge to conclude that the defendant was intoxicated. Id. As in Saucier, despite the absence of Intoxilyzer results, there was sufficient evidence presented to the jury in this case to conclude that Smith was intoxicated at the time of his collision with Wilkerson. Smith's argument to the contrary is without merit.
III. WHETHER THE COURT ERRED BY REPLACING A JUROR PRIOR TO THE BEGINNING OF DELIBERATIONS
¶ 28. Smith's third argument on appeal is that the trial court abused its discretion when, prior to deliberations, the court replaced a regular juror with an alternate. The State contends that Smith's challenge is procedurally barred, citing the fact that Smith failed to object to the alternate prior to impaneling of the jury. In the alternative, the State asserts that the trial judge did not abuse his discretion. We find that the trial court did not abuse its discretion, and therefore, we will not address the procedural issue raised by the State.
¶ 29. Mississippi Code Annotated section 13-5-67 (Rev.2002) governs the impaneling and substitution of alternate jurors. In pertinent part, this statute provides that "[a]lternate jurors in the order in which they are called shall replace jurors who, prior to the time the jury retires to consider its verdict, become unable or disqualified to perform their duties." Miss.Code Ann. § 13-5-67. Although trial courts have complete discretion in replacing a regular juror with an alternate, the Mississippi Supreme Court has made it clear that this discretion should not be arbitrarily exercised. McCoy v. State, 820 So.2d 25, 29(¶ 11) (Miss.Ct.App.2002) (citing Myers v. State, 565 So.2d 554, 557 (Miss.1990)). To avoid an abuse of discretion charge, our supreme court has suggested that the trial court record should reflect the exact reasons for a juror's dismissal. Id. (citing Stevens v. State, 513 So.2d 603, 605 (Miss.1987)). However, even where no valid reasons are evident from the record, an aggrieved party must *1007 demonstrate actual prejudice by the trial court's decision before we will reverse on this ground. Id. at 29-30(¶ 11) (citing Vaughn v. State, 712 So.2d 721, 724(¶ 15) (Miss.1998)).
¶ 30. According to the record, the trial court in the instant case expressed concern over several attributes and actions of the dismissed juror. The juror had been late to court on two occasions. In addition, the juror had received mental treatment in the past, and the court expressed its concern that the juror may have been mentally retarded. The juror had been seen sleeping in the jury box. He had also been seen taking notes completely out of sync with the presentation of testimony. Despite the court's concern over the preceding allegations, it was not until the court recalled that this particular juror had been a victim of a crime  and had therefore been involved in a criminal case  that the court finally decided to dismiss this juror. These concerns were discussed in the presence of both parties. Over the objection of Smith's counsel, the court decided to replace the regular juror with an alternate. Jury deliberations had not yet begun when the court made this substitution.
¶ 31. "Questions about juror competency are considered against the backdrop of the general principle that a judge is empowered with broad discretion to determine whether a prospective juror can be impartial." Green v. State, 644 So.2d 860, 863 (Miss.1994) (citing Myers, 565 So.2d at 558). In light of the reasons articulated by the trial judge for replacing the juror in this case, we cannot conclude that the trial judge abused his "broad discretion" in replacing the regular juror with the alternate. Accordingly, this assignment of error is without merit.
IV. WHETHER THE COURT ERRED BY REFUSING DEFENDANT'S JURY INSTRUCTION DI-7
¶ 32. Smith's final assertion of error concerns the trial court's refusal to grant defendant's instruction DI-7. The proposed instruction reads as follows:
The Court instructs the jury that before you can find the Defendant, Randall M. Smith "Guilty" of the crime charged against him the State of Mississippi must prove, beyond a reasonable doubt, that his negligence, if any, was the sole proximate cause of the accident giving rise to the charges against him.
If you find from the evidence, or lack of evidence, in this cause, that the driver of the other vehicle, Crystal E. Wilkerson, was also negligent, and that her negligence, if any you so find, contributed to the accident, then you must, under your oaths, find the Defendant "Not Guilty."
We find that the trial court properly refused the defendant's proposed instruction DI-7.
¶ 33. Defendant's instruction DI-7 was properly denied because it incorrectly states the negligence standard of the applicable statute, placing a burden upon the State not required by Mississippi Code Annotated section 63-11-30(5). This provision requires proof that the defendant was intoxicated and "in a negligent manner" caused the death or serious injury of another. Miss.Code Ann. § 63-11-30(5). As previously noted by this Court, the Mississippi Supreme Court has stated that simple negligence is sufficient to satisfy this requirement. Ware v. State, 790 So.2d 201, 216(¶ 53) (Miss.Ct.App.2001) (citing Holloman v. State, 656 So.2d 1134, 1140 (Miss.1995)).
¶ 34. Contrary to Smith's contention, the State does not have to prove that there were no other negligent causes, merely that the negligence of the defendant was a cause. As this Court stated in Frambes v. State, 751 So.2d 489, 492(¶ 17) (Miss.Ct. *1008 App.1999), "[f]elony DUI requires a negligent act, from which death or injury results." Id. (emphasis added) (citing Wilkerson v. State, 731 So.2d 1173 (Miss.1999)). The effect of the instruction offered by Smith, and the argument advanced by Smith now on appeal, is that if Wilkerson had negligently contributed in any way to the accident, then Smith should have been found "not guilty." Smith points to no authority which would exonerate an intoxicated driver who negligently causes death or injury to another, simply because the victim, or anyone else, was also negligent. Wilkerson's negligence would be exculpatory as to Smith only if her negligence was the sole proximate cause of the accident. Even so, it would not be Wilkerson's negligence which would be exculpatory but the obvious conclusion that if Wilkerson's negligence was the sole proximate cause, then Smith's negligence, if any, could not have played a role in the accident.
¶ 35. Smith mistakenly relies on Frambes to support his contention that any negligence on the part of Wilkerson would be grounds for acquittal. There is nothing in our holding in Frambes which could be read to support Smith's argument. Similarly misplaced is Smith's reliance on Dickerson v. State, 441 So.2d 536 (Miss.1983). Smith seizes upon language contained in Dickerson which acknowledges that one may be "guilty of negligence such as might impose upon him some liability in a civil action for damages" and yet not be guilty of manslaughter. Id. at 540. What Smith apparently overlooks is that manslaughter requires culpable negligence, "which is the moral equivalent of willfulness," whereas aggravated DUI requires only simple negligence. Compare id. (manslaughter), with Holloman, 656 So.2d at 1140(DUI). Neither of these cases supports Smith's argument. Accordingly, the trial court did not err by refusing Smith's proposed jury instruction DI-7.

CONCLUSION
¶ 36. After a thorough review of the record, we find that the jury was presented with substantial evidence to support its verdict in this case. Although two of the elements of the aggravated DUI charge were disputed, these disputes were appropriately resolved by a properly instructed jury. The judgment of the trial court is, therefore, affirmed in all respects.
¶ 37. THE JUDGMENT OF THE WARREN COUNTY CIRCUIT COURT OF CONVICTION OF AGGRAVATED DRIVING UNDER THE INFLUENCE OF INTOXICATING LIQUOR AND SENTENCE OF TEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH THREE YEARS TO SERVE, WITH FIVE YEARS OF POST RELEASE SUPERVISION AND A FINE OF $1,000 IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.
NOTES
[1] Although the sentencing order does not mention that any portion of the sentence was to be suspended, the transcript of Smith's sentencing hearing reveals that the circuit court explicitly stated that seven years of the ten-year sentence were suspended. We mention this omission so that the circuit court may exercise its inherent power to correct the sentencing order to make the order correspond with the judgment actually rendered. See Kitchens v. State, 253 Miss. 734, 737, 179 So.2d 13, 14 (1965); Harvey v. State, 919 So.2d 282, 285(¶ 9) (Miss.Ct.App.2005).
[2] Smith points to the accident report completed a few days after the accident as one of Wilkerson's inconsistent accounts. That report states that Wilkerson changed lanes in an attempt to avoid Smith, but that Smith also changed lanes. Wilkerson then changed back to her proper lane, again in an attempt to avoid a collision. Smith also changed lanes again, resulting in the head-on collision. At trial, Wilkerson did not deny making that statement to the investigating deputy, but instead testified that she did not remember saying that she switched lanes, as her testimony at trial was that she did not have time to switch lanes before the collision. To account for her lack of memory surrounding the accident report, Wilkerson testified that the deputy who completed the report questioned her a few days after the accident. At this time, Wilkerson was in the hospital recovering from her surgery and was taking strong pain medications. Wilkerson made two more statements prior to trial. Both accounts were consistent with her trial testimony in that on both occasions, Wilkerson asserted that she did not have time to switch lanes before the collision.
[3] Both Wheeler and Ransom admitted that they had known Smith for many years prior to the accident. Donna Ragland had regularly performed work for Smith's attorneys. In addition to these possible sources of bias, the jury may have questioned the plausibility of three people witnessing an accident of this magnitude, and not even attempting to contact emergency personnel. There were also factual inconsistencies between the testimony of Smith, Ransom, and Wheeler.