# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-KA-02048-COA

CLARENCE DWAYNE JEFFERSON A/K/A CLARENCE D. JEFFERSON A/K/A CLARENCE JEFFERSON                                APPELLANT

v.

STATE OF MISSISSIPPI                                                                APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 10/18/2013 |
| TRIAL JUDGE: | HON. PRENTISS GREENE HARRELL |
| COURT FROM WHICH APPEALED: | MARION COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: BENJAMIN ALLEN SUBER |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: STEPHANIE BRELAND WOOD |
| DISTRICT ATTORNEY: | HALDON J. KITTRELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF FELONY DUI AND SENTENCED AS A HABITUAL OFFENDER TO FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH ONE YEAR SUSPENDED AND FOUR YEARS TO SERVE, AND ORDERED TO PAY A $1,000 FINE AND $1,000 TO THE MARION COUNTY PUBLIC DEFENDER'S FUND |
| DISPOSITION: | AFFIRMED: 11/18/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., CARLTON AND FAIR, JJ.**

**FAIR, J., FOR THE COURT:**

¶1.    Clarence Jefferson was convicted of felony DUI, which required proof that he was driving while intoxicated and that he had two prior DUI convictions within the last five

years. Jefferson contends that the evidence against him was insufficient in both respects. We disagree, so we affirm his conviction and sentence.

## DISCUSSION

### 1. The Sufficiency of the Evidence Test

¶2. When the sufficiency of the evidence is challenged, the issue before this Court on appeal is whether the evidence shows "beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed." *Bush v. State*, 895 So. 2d 836, 843 (¶16) (Miss. 2005) (citation omitted). "[W]here the evidence fails to meet this test it is insufficient to support a conviction." *Id.*

¶3. But, as the United States Supreme Court has explained, a court should not "ask itself whether *it* believes that the evidence established guilt beyond a reasonable doubt." *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 315 (1979)) (emphasis in original; internal quotation marks omitted). "Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Jackson, 443 U.S. at 315*).

¶4. A reviewing court must reverse the conviction and render a judgment of acquittal if "the facts and inferences . . . point in favor of the defendant on any [one] element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty." *Id.* (citation and internal quotation marks omitted).

## 2. The Definition of Felony DUI

¶5.     The crime of felony DUI is defined by statute. Jefferson was charged under Mississippi Code Annotated section 63-11-30 (Rev. 2013), which at the time of the alleged offense provided in relevant part:

> (1) It is unlawful for any person to drive or otherwise operate a vehicle within this state who (a) is under the influence of intoxicating liquor; [or] . . . (c) has an alcohol concentration of eight one-hundredths percent (.08%) or more for persons who are above the legal age to purchase alcoholic beverages under state law . . . .

While the first and second DUI offenses are misdemeanors with a lesser punishment, Jefferson was charged under subsection (2)(c), which makes it a felony to commit a third or subsequent DUI within a five-year period (quoted in relevant part):

> [F]or any third or subsequent conviction of any person violating subsection (1) of this section, the offenses being committed within a period of five (5) years, such person shall be guilty of a felony and fined not less than Two Thousand Dollars ($2,000.00) nor more than Five Thousand Dollars ($5,000.00), shall serve not less than one (1) year nor more than five (5) years in the custody of the Department of Corrections; provided, however, that for any such offense which does not result in serious injury or death to any person, any sentence of incarceration may be served in the county jail rather than in the State Penitentiary at the discretion of the circuit court judge. The minimum penalties shall not be suspended or reduced by the court and no prosecutor shall offer any suspension or sentence reduction as part of a plea bargain. The law enforcement agency shall seize the vehicle operated by any person charged with a third or subsequent violation of subsection (1) of this section, if such convicted person was driving the vehicle at the time the offense was committed. Such vehicle may be forfeited in the manner provided by Sections 63-11-49 through 63-11-53. Except as may otherwise be provided by paragraph (e) of this subsection, the Commissioner of Public Safety shall suspend the driver's license of such person for five (5) years.

¶6.     Operating a vehicle while under the influence of intoxicating liquor and having two

convictions for DUIs committed within the last five years are both elements of the offense of felony DUI. *See Williams v. State*, 991 So. 2d 593, 605 (¶40) (Miss. 2008). Since Jefferson must be acquitted if he prevails in showing insufficient evidence of either element of the offense, we will address the evidence that supports each element separately. *See Bush*, 895 So. 2d at 843 (¶16).

### 3. Driving Under the Influence

¶7.    The record from the trial indicates that Jefferson was stopped at a safety checkpoint in Columbia, Mississippi, at around 9:45 p.m. on October 15, 2012, a Friday night. Officer Justin McKenzie of the Columbia Police Department, a DUI enforcement officer, testified that he encountered Jefferson after he was stopped. Officer McKenzie, who is a certified field sobriety test instructor, testified at length as to his observations and investigation of Jefferson:

> A.    When I approached [Jefferson] and beg[an] convers[ing] with him, he seemed pretty nervous. He was kind of pacing back and forth. He had bloodshot eyes. I could smell the aroma of intoxicating beverages coming from his person. And based upon that, I deemed that I needed to perform some field sobriety tests and possibly a portable Breathalyzer. I used the PBT, preliminary breath test, and it indicated positive for the presence of alcohol. From there I moved on to the standardized field sobriety testing.
>
> Q.    And you stated before that you had specific training in these field sobriety tests?
>
> A.    Yes, ma'am.
>
> Q.    Which tests did you perform first?
>
> A.    To begin with, the horizontal gaze nystagmus. During that test I

4

received six of the six clues, plus vertical.

Q.     Let's back up. Can you explain to the jury what the horizontal gaze nystagmus is?

A.     It's commonly – a lot of folks will say the finger test or the pen test, where they are asking you to follow a certain stimulus, be it your finger, a pen, a small light, or anything of that nature. Of course, the horizontal and the gaze is referred to as you are going in a horizontal movement. There's three phases to that test. Then you want to check for vertical gaze nystagmus.

Q.     When you performed the test, what are you looking for specifically?

A.     You're looking for the nystagmus. Nystagmus is the involuntary jerking of the eyes.

Q.     You said you noted six of six clues. How many possible clues are there?

A.     There are six clues total. That's based upon a person with two eyes, because each – you are looking for three clues, and then you have two eyes. So that's where you justify the six of the six. That's based on the criteria that NHTSA provides us, which is the National Highway Traffic Safety Administration.

Q.     What are the three clues that are six total?

A.     The first thing you are looking for is the lack of smooth pursuit. The second is distinct and sustained nystagmus at maximum deviation. And the third is onset prior to 45 degrees.

Q.     Can you explain that in a way that we can understand it?

A.     The first one is just – to begin the test, you would do an equal tracking format, which is basically just moving it two times in both directions at roughly the same speed. Just a common pace back and forth. You're making sure both eyes will track together so you can perform the test. From there you check for the lack of smooth pursuit, which is two more passes at basically the same pace. You are making sure that both eyes are tracking from side to side together. While you are watching them

5

– I start with the left eye first, because you always start with the suspect's left side. You move to the left, to the right, back to the left, then back to the right, and then back to the center. During the first pass I'm looking at the left eye. The second pass, I'm looking at the right eye. You are looking for involuntary jerking as the eye moves along. It was very distinguished that night with Mr. Jefferson.

Q.    After you performed the horizontal gaze nystagmus test, what did you do next?

A.    I attempted to do the walk-and-turn, which we were able to complete, but it was without good cooperation from Mr. Jefferson. Mr. Jefferson made two different attempts to go back to his vehicle. Both times he attempted to get – not necessarily get in, but he was reaching into the vehicle for whatever reason. He was instructed several times not to go back to the vehicle, to remain where he was.

From that point I would have proceeded with the instruction stage, which is to basically imagine there's a line, if there's not one available, put his left foot on that line and the right foot in front heel to toe and remain in that position. Mr. Jefferson continuously attempted to start the test and do it on his own. We run across that on various occasions with different impaired people that believe they already know the test, so they want to go ahead and do the test. The instructions were simple: To remain in that position. The first clue that was actually noted when the test was complete was that he could not maintain the balance and he began the test before instructed to do so. Mr. Jefferson – upon completing the test, I collected six of the eight clues available, and that is: He used his arms to balance; he missed heel to toe; he stepped off the line to the left and to the right; when he made the turn, he made an incorrect turn by making a wide radius turn, and then he took three steps backwards in an attempt to regain his balance before proceeding with nine steps in the other direction.

Q.    Did you perform any other field sobriety tests?

A.    I attempted the one-leg stand, which is the final stage of the standardized field sobriety. After he attempted to do the test twice incorrectly, the test was discontinued.

Q.    After you discontinued the field sobriety tests, what did you do next?

6

A. I placed him into custody and transported him to Marion County jail.

¶8. After his arrest, Jefferson initially refused to have his blood alcohol concentration tested, but he eventually consented to test his breath with a machine called the Intoxilyzer 8000. However, the device would not self-calibrate properly and could not be used. According to Officer McKenzie, when it became clear the Intoxilyzer 8000 would not work, Jefferson insisted on using it. He did not respond to offers to have blood drawn for direct testing.

¶9. Officer McKenzie also testified that Jefferson admitted he had "a few earlier," apparently referring to alcoholic beverages. McKenzie concluded, from his observations and from his training and experience, that Jefferson was under the influence.

¶10. Mississippi's DUI statute provides that proof of driving under the influence may be shown either by the defendant's blood alcohol content, called "per se DUI," or by evidence sufficient to show the defendant was "under the influence of intoxicating liquor," – common law DUI. "Common law DUI is proven when a defendant's blood alcohol results are unavailable . . . but there is sufficient evidence to [show] that the defendant operated a motor vehicle under circumstances indicating his ability to operate the vehicle was impaired by the consumption of alcohol." *Young v. State*, 119 So. 3d 309, 315 (¶19) (Miss. 2013) (citation omitted). Since there were no blood alcohol test results available in this case, Jefferson's prosecution was under the common law DUI theory.

¶11. Officer McKenzie testified that Jefferson admitted he had been drinking earlier that

7

night; that he smelled of alcoholic beverages, had bloodshot eyes, appeared nervous, and acted obstinately; and that a portable breath test was positive for alcohol. These are all evidence of intoxication. *See Saucier v. City of Poplarville*, 858 So. 2d 933, 936 (¶14) (Miss. Ct. App. 2003). Officer McKenzie also described at length how Jefferson failed or could not complete all three field sobriety tests, including the walk-and-turn, the horizontal-gaze-nystagmus, and the one-leg-stand. Field sobriety tests can also be evidence of intoxication. *See Deloach v. City of Starkville*, 911 So. 2d 1014, 1018 (¶16) (Miss. Ct. App. 2005).

¶12. Jefferson exercised his right not to testify in his own defense, instead relying on the argument that the prosecution failed to meet its burden to prove him guilty beyond a reasonable doubt. On appeal, he points out that no one testified that his operation of the vehicle appeared to be affected. He notes that his performance of the field sobriety tests could have been affected by conditions such as arthritis or poor footwear, though there was no evidence this was actually the case. Jefferson further notes that Officer McKenzie admitted the encounter could have been recorded on video, but was not.

¶13. All of Jefferson's arguments are actually directed to the weight of the evidence rather than its sufficiency. In other words, Jefferson attempts to place the evidence of guilt into doubt. But conflicts in the evidence, or conflicting inferences that could be drawn from the evidence, were for the jury to resolve as the trier of fact. Since the jury convicted Jefferson, on appeal this Court must view the evidence "in the light most favorable to the prosecution," and ask only whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Bush v. State*, 895 So. 2d 836, 843 (¶16) (Miss. 2005)

(citation omitted).

¶14. After reviewing the record, we find the evidence we have discussed above, viewed in its totality, was sufficient for a reasonable juror to conclude beyond a reasonable doubt that Jefferson "operated a motor vehicle under circumstances indicating his ability to operate the vehicle was impaired by the consumption of alcohol." *Young*, 119 So. 3d at 315 (¶19) (citation omitted). Jefferson's arguments to the contrary are without merit.

### 4. Prior DUI Convictions

¶15. The other contested element of Jefferson's guilty verdict is whether he had been convicted of two other DUIs committed in the previous five years. To prove this element, the prosecution called two witnesses, custodians of court records from two different jurisdictions in Mississippi.

¶16. Melissa Creel was a deputy court clerk at the Municipal Court of Petal. She provided the foundation for introducing a certified abstract of a conviction of "Clarence D Jefferson" for a DUI committed on January 17, 2010. The abstract contained various identifying information such as an address in Columbia, Mississippi, Jefferson's race and sex, the tag number and make of his vehicle, and his social security number and date of birth. It indicated "NL" for the driver's license, presumably indicating "no license."

¶17. Wynette Parkman was a clerk who oversaw the Marion County Justice Court clerk's office. She authenticated a certified abstract of conviction and various accompanying

documents for a DUI committed by "Jefferson Clarence Dwayne" on January 18, 2010.[1] The abstract also contained identifying information, but it was not exactly the same as the Petal abstract. Jefferson's race and sex were indicated and were the same. The same day and month were given for the birth, but the year was different – 1969 on the Petal abstract and 1964 on the Marion County abstract. A different address was shown, but both were in Columbia. The Marion County abstract had no box for a social security number, but it gave a driver's license number that was the same as Jefferson's social security number on the Petal abstract. No vehicle information was given.

¶18.    The ticket for the DUI in today's case was admitted into evidence and authenticated by Officer McKenzie. It showed Jefferson's race and sex as on the abstracts, and the same day and month of birth, with 1964 as the year. Jefferson's license address was the same address as on the Marion County abstract. Jefferson's driver's license number was the same as the driver's license number on the Marion County abstract and the social security number on the Petal abstract. Officer McKenzie testified that this was also Jefferson's social security number. A vehicle was indicated, but it was different from the one on the Petal abstract.

¶19.    Jefferson's argument on appeal is that because some of the information on these documents is conflicting – primarily the year of birth, 1964 versus 1969 – the jury did not have before it sufficient evidence to conclude it was the same Clarence Jefferson in each case. We disagree. All of the documents bear the same social security or driver's license

---

[1] It should be noted that this is the day after the date of the offense on the other abstract.

number, and Officer McKenzie testified that it was both Jefferson's social security number and driver's license number. It is also a matter of common knowledge that, until recently, Mississippi often used a person's social security number as his driver's license number. The differing year of birth can be explained as a scrivener's error, given the similarity of the numerals "4" and "9" and Creel's testimony that the Petal abstract was entered into a computer from a handwritten ticket. As to Jefferson's address, it is true that the addresses on the two abstracts differ. This is concerning because the abstracts refer to offenses that occurred on consecutive days – January 17 and 18, 2010. However, the source of the addresses is not given; they could have come from Jefferson himself, from his driver's license, or from some other source. Addresses are easily changed and one's address as indicated on a license or kept in a database can be outdated. In fact, one of the abstracts indicates "NL" for the license number, presumably indicating that Jefferson had no license with him when he was arrested. Given this, that the addresses were different goes to the weight of this evidence rather than its sufficiency.

¶20. "It [is] within the jury's province to draw reasonable inferences from the evidence based on their experience and common sense." *Broomfield v. State*, 878 So. 2d 207, 215 (¶30) (Miss. Ct. App. 2004). Jefferson's name, social security / driver's license number, day and month of birth, sex, race, and city of residence appear on both abstracts. There is some conflicting data, but it is easily explained; so we are satisfied that a reasonable jury could have found that Jefferson is the person who was convicted of both prior offenses. This issue is without merit.

11

## CONCLUSION

¶21.    Because there was sufficient evidence for a reasonable jury to find every element of the offense, the question of Jefferson's guilt or innocence was properly entrusted to the jury. This Court cannot disturb the jury's verdict on appeal.

¶22.    **THE JUDGMENT OF THE CIRCUIT COURT OF MARION COUNTY OF CONVICTION OF FELONY DUI AND SENTENCE AS A HABITUAL OFFENDER OF FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH ONE YEAR SUSPENDED AND FOUR YEARS TO SERVE, AND TO PAY A $1,000 FINE AND $1,000 TO THE MARION COUNTY PUBLIC DEFENDER'S FUND, IS AFFIRMED.  ALL COSTS OF THIS APPEAL ARE ASSESSED TO MARION COUNTY.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL AND JAMES, JJ., CONCUR.**