**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 94-40358
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LUCIUS BREELAND, II,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Western District of Louisiana
_____

(May 15, 1995)

Before DAVIS, JONES, and EMILIO M. GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Lucius Breeland II appeals from his conviction for possession of an unregistered firearm in violation of the National Firearms Act, 26 U.S.C. § 5861(d) (1988). Finding no reversible error, we affirm.

I

Louisiana State Trooper David Desormeaux stopped Breeland on Interstate Highway 10, and after discovering that Breeland did not have a driver's license, he placed Breeland under arrest. Trooper Desormeaux then called a wrecker to tow the vehicle to a pound and, pursuant to Louisiana State Police policy, conducted an inventory

search of the vehicle.  When he opened the vehicle's tailgate, he discovered two weapons:  a pump-action shotgun designed to look like a machine gun, and a sawed-off double barrel shotgun, the stock of which had been converted into a pistol grip.

A federal grand jury indicted Breeland on two counts.  In Count One, Breeland was charged with possession of an unregistered sawed-off shotgun in violation of 26 U.S.C. § 5861(d), and in Count Two, he was charged with transportation of a firearm while under indictment for a crime punishable by imprisonment for a term exceeding one year in violation of 18 U.S.C. § 922(n) (1988). After a brief trial, a jury found Breeland guilty on Count One and not guilty on Count Two.

Breeland now appeals, contending (1) that the district court erroneously denied Breeland's motion to suppress the sawed-off shotgun recovered from his vehicle, (2) that Breeland's sawed-off shotgun did not meet the definition of a "firearm" in 28 U.S.C. § 5845(a) (1988), (3) that the prosecutor's statements during his closing argument amounted to prosecutorial misconduct, and (4) that the district court deprived Breeland of his right to counsel when it refused to allow him to discharge his appointed counsel and obtain new appointed counsel.[1]

---

[1]     In addition, Breeland's counsel contends that the district court erroneously denied his motion for excess compensation under the Criminal Justice Act, 18 U.S.C. 3006A(d)(3) (1988).  We do not reach this issue because it is not properly raised in an appeal from the defendant's conviction. *See United States v. Todd*, 475 F.2d 757, 759 n.3 (5th Cir. 1973); *United States v. Sullivan*, 456 F.2d 1273, 1275 (5th Cir. 1972).

II

A

Breeland appeals from the district court's denial of his motion to suppress the sawed-off shotgun, arguing that Trooper Desormeaux improperly stopped Breeland's vehicle. The government may not use evidence obtained in violation of the Fourth Amendment's prohibition against unreasonable searches and seizures to prove a defendant's guilt at trial. *United States v. Thomas*, 12 F.3d 1350, 1366 (5th Cir.) (citing *Weeks v. United States*, 232 U.S. 383, 398, 34 S. Ct. 341, 346, 58 L. Ed. 652 (1914)), *cert. denied*, ___ U.S. ___, 114 S. Ct. 1861, 128 L. Ed. 2d 483 (1994). A police officer's brief investigatory stop of a vehicle and its driver does not violate the Fourth Amendment provided it is based on "the `reasonable suspicion' that the person is engaged or is about to be engaged in criminal activity." *United States v. Tellez*, 11 F.3d 530, 532 (5th Cir. 1993) (citing *Terry v. Ohio*, 392 U.S. 1, 21-22, 88 S. Ct. 1868, 1879-80, 20 L. Ed. 2d 889 (1968)), *cert. denied*, ___ U.S. ___, 114 S. Ct. 1630, 128 L. Ed. 2d 354 (1994). Such criminal activity includes traffic violations. *Thomas*, 12 F.3d at 1366; *United States v. Shabazz*, 993 F.2d 431, 434-35 (5th Cir. 1993).

The district court denied Breeland's motion to suppress based on the Report and Recommendation of a United States Magistrate Judge. The magistrate judge determined that Trooper Desormeaux's investigatory stop was proper because before he initiated the stop

he observed that the vehicle was emitting excessive smoke and that the vehicle's tail light was defective. Breeland contests the magistrate judge's finding, adopted by the district court, that Trooper Desormeaux observed the defective tail light before initiating the stop.[2] "In reviewing a district court's ruling on a motion to suppress evidence based on testimony at a suppression hearing, we must accept the district court's factual findings unless they are clearly erroneous or are influenced by an incorrect view of the law." *United States v. Garcia*, 849 F.2d 917, 917 n.1 (5th Cir. 1988). We view the evidence in the light most favorable to the Government, the party that prevailed below, *id.*, and if the magistrate judge's account of the evidence is "plausible in light of the record viewed in its entirety," we may not reverse, *Anderson v. City of Bessemer City*, 470 U.S. 564, 574, 105 S. Ct. 1504, 1511, 84 L. Ed. 2d 518 (1985).

The magistrate judge held two evidentiary hearings on Breeland's motion to suppress. After the first, she found as follows: "Having considered the substance of the testimony offered, and the credibility of the witnesses, I find that the officer observed an inoperable right rear tail light before pulling Lucius Breeland's vehicle off the highway, and thus, that he had a

---

[2] Breeland also contends that his violation of Louisiana's excessive smoke statute, La. Rev. Stat. Ann. § 32:352C (West 1989), could not form the basis of an investigatory stop because the statute is unconstitutionally vague. We do not address the merits of Breeland's constitutional claim because we affirm the district court's denial of the motion to suppress based on its finding that Trooper Desormeaux observed the defective tail light before initiating the stop.

legitimate reason for pulling the vehicle off of the roadway."[3]

Based on Breeland's assertion of "new evidence," the magistrate judge conducted another evidentiary hearing. At the second hearing, Breeland called eight witnesses))five relatives and three friends of relatives))to testify that the tail light was working at various times, some near the time of his arrest. In her Second Supplemental Report and Recommendation, the magistrate judge noted that:

> [T]he credibility determination was ultimately narrowed to an evaluation of Trooper Desormeaux's testimony versus the testimony of Lucius Breeland, Sr. [the defendant's father] and Ray Earnest [an acquaintance of Lucius Breeland, Sr.], the only two witnesses who testified specifically about the condition of the vehicle immediately after the defendant's arrest, and that of Lucius Breeland, II. Breeland, II, testified at the state hearing and at the hearing on June 8, 1993. Yet, he never offered any testimony under oath as to whether the light was or was not operable on January 4, 1991.

Record on Appeal, vol. 2. at 299-300. The magistrate judge, after weighing the testimony of these various individuals, again found that Trooper Desormeaux observed the inoperable tail light before initiating the stop.

Breeland contends that the magistrate judge's findings are contrary to the "great weight of evidence and testimony" because she credited Trooper Desormeaux's testimony over that of the eight witnesses who testified on Breeland's behalf. On appeal, however, we must accept the magistrate judge's findings unless they are

---

[3] Trooper Desormeaux testified that he began following the vehicle after noticing its exhaust emissions, but that he observed the malfunctioning tail light before initiating the stop.

clearly erroneous.  *Garcia*, 849 F.2d at 917 n.1.  "Clear error is especially rigorous when applied to credibility determinations because the trier of fact has seen and judged the witnesses." *United States v. Casteneda*, 951 F.2d 44, 48 (5th Cir. 1992).  With due deference to the magistrate judge's credibility determination,[4] and viewing the evidence in the light most favorable to the government, we hold that her finding was "plausible in light of the record viewed in its entirety."  *Anderson*, 470 U.S. at 574, 105 S. Ct. at 1511.

Breeland also challenges the magistrate judge's finding on legal grounds, asserting that it conflicted with a "binding stipulation of fact" Breeland entered into with the Government. The stipulation to which Breeland refers is a document prepared and filed by the magistrate judge memorializing a pretrial conference. In it, the magistrate judge stated:

> The following facts were stipulated.
> On January 4, 1991, at approximately 7:25 a.m., Trooper David Desormeaux observed a 1982 Datsun Maxima stationwagon bearing an Alabama license plate west bound on Interstate Highway 10 in Lafayette Parish.  He observed a great deal of smoke emitting from the exhaust

---

[4]    The magistrate judge made specific findings regarding the credibility of Breeland's father and Ray Earnest:

> With respect to the testimony of Lucius Breeland, Sr., who testified both at the state hearing in January 1991 and at the hearing on August 30, 1993, I note that his answers were frequently evasive and his attitude belligerent.  Finally, I note with respect to the testimony of Mr. Earnest that his respect for the authority of this court is subject to question.  He admitted on cross-examination, inter alia, that he did not believe himself to be a citizen of the United States, that he had once sent documents to the United States Attorney's office seeking to renounce his citizenship, that only "positive" laws apply to him, and that this Court was legitimate "in its rightful place . . . ."

Record on Appeal, vol. 2, at 299.

-6-

> of the vehicle and followed for approximately one-quarter of a mile observing the vehicle. He then turned on his lights to signal the vehicle to pull over.
>
> At this point, a factual dispute arises. The Government contends that Trooper Desormeaux observed an inoperable rear tail light during the time that the Breeland vehicle was pulling off to the side of the highway. The defendant disputes this contention.

Record on Appeal, vol. 1, at 97. When Breeland objected to the magistrate judge's first Report and Recommendation on the grounds that her findings conflicted with the above "stipulation," the magistrate judge issued a Supplemental Report and Recommendation in which she stated that the parties had not stipulated to the timing of Trooper Desormeaux's observation of the tail light. As the above-quoted language makes clear, the parties did not stipulate that Trooper Desormeaux observed the tail light only after initiating the traffic stop. In fact, the parties disputed whether Trooper Desormeaux observed the tail light at all. Consequently, we do not decide whether, if the parties *had* stipulated as to the timing of Trooper Desormeaux's observation of the tail light, the magistrate judge would have been bound by that stipulation.

B

Breeland also challenges the sufficiency of the evidence to convict him on Count One of his indictment, arguing that the weapon produced at trial was not a "firearm" as that term is defined in the National Firearms Act, 26 U.S.C. §§ 5801-5872 (1988).[5] In

---

[5] Congress amended the National Firearms Act in respects not relevant to this case in the Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322, 108 Stat. 1796 § 110301, codified at 26 U.S.C.A. § 5802 (West Supp. 1995).

pertinent part, the Act prohibits the possession of a firearm that is not registered to the possessor in the National Firearms Registration and Transfer Record. 26 U.S.C. § 5861(d).[6] The statute defines the term "firearm" as, among other things, "(1) a shotgun having a barrel or barrels of less than 18 inches in length; [and] (2) a weapon made from a shotgun if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 18 inches in length." 26 U.S.C. § 5845(a).[7] The Act then defines a "shotgun" as:

> a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of the explosive in a fixed shotgun shell to fire through a smooth bore either a number of projectiles (ball shot) or a single projectile for each pull of the trigger, and shall include any such weapon which may be readily restored to fire a fixed shotgun shell.

26 U.S.C. § 5845(d).

Breeland contends that the sawed-off shotgun produced at trial does not meet the definition of shotgun in § 5845(d) because, as modified, it was not intended to be fired from the shoulder. This argument overlooks the fact that a weapon need not be a shotgun to meet the definition of "firearm" in § 5845(a). Section 5845(a)(2) provides that the term "firearm" includes "a weapon *made from* a shotgun" (emphasis added) which, as modified, has a barrel of less

---

[6]    It is undisputed in this case that Breeland's sawed-off shotgun was not registered to him.

[7]    It is also undisputed that Breeland's sawed-off shotgun had a barrel of less than 18 inches in length and an overall length of less than 26 inches.

than eighteen inches or an overall length of less than twenty-six inches. Breeland's weapon, as modified, may not have been intended to be fired from the shoulder,[8] but under § 5845(a)(2), the relevant inquiry is whether it was made from a weapon intended to be fired from the shoulder.

To this extent, we adopt the reasoning of the First Circuit in *United States v. Cabral*, 475 F.2d 715 (1st Cir. 1973). In response to a similar argument, that court held:

> Appellant's additional argument that the government was required, under the indictment, to prove that the weapon in issue was a sawed-off shotgun "intended to be fired from the shoulder" merits little discussion. The short answer to this contention is that Title 26 of the United States Code, under which he was indicted, does not contain any definition of "sawed-off shotgun," let alone a definition which would require that such a weapon be designed to be fired in a particular manner. 26 U.S.C. § 5845(d), which defines "shotgun," does contain a provision that such weapons, as originally manufactured, must be designed to be fired from the shoulder and it is undisputed that the firearm which was taken from appellant fell within this definition before it was altered. Subsection (a)(2) of the same provision defines the word "firearm" as used in the indictment as follows: "a weapon made from a shotgun if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 18 inches in length."

Id. at 720 (footnote omitted). *See also United States v. Bogers*, 635 F.2d 749, 751 (8th Cir. 1980) ("Appellant contends that the weapon [a sawed-off shotgun] does not fit the definition of shotgun found in 26 U.S.C. § 5845(d). However, appellant was charged with

---

[8] The stock of the shotgun had apparently been partially sawed off and filed down to make a pistol grip. Trooper Guy Barnett, who test-fired the sawed-off shotgun, testified that he did so by holding the pistol grip in his right hand and the forearm grip in his left.

illegally possessing and transferring a *firearm*, the definition of which includes a `weapon made from a shotgun' of less than legal length.").

Breeland does not challenge the sufficiency of the evidence tending to show that Breeland's weapon was manufactured as a shotgun and later altered, and he acknowledged at oral argument that the weapon had apparently been modified. The evidence at trial supporting this conclusion consisted of Officer Barnett's testimony that the stock appeared to have been sawed off and filed down, and the weapon itself, the stock of which has been visibly changed into a pistol-grip. Viewing this evidence and all reasonable inferences to be drawn from it in the light most favorable to the jury's verdict, we hold that a rational jury could find beyond a reasonable doubt that Breeland's weapon was (1) "made from a shotgun," and (2) shorter than the dimensions provided in § 5845(a)(2), thereby satisfying the definition of a firearm in the National Firearms Act.

C

Breeland also argues that the Government made improper statements in its closing argument.[9] In light of our holding that

---

[9] Breeland specifically complains of two remarks. First, the Government stated, "Now, the defense counsel says, you shouldn't find him guilty of these firearms because he hasn't done anything bad with them, he didn't rob any place, he didn't shoot anybody. The question becomes do you want the federal government to wait until he's killed somebody with these things . . . ," at which point Breeland's counsel objected and the court instructed the jury to disregard the remark. Second, the Government ended its closing argument by urging the jury to return a verdict of guilty and stating, "To do otherwise is to put each and everyone of us at risk. Thank you."

Breeland's sawed-off shotgun met the definition of firearm in 26 U.S.C. § 5845(a)(2), the Government's proof that Breeland possessed an unregistered firearm was overwhelming.[10]  Consequently, we hold that the Government's statements, even if improper, were harmless. *See United States v. Hasting*, 461 U.S. 499, 511-12, 103 S. Ct. 1974, 1982, 76 L. Ed. 2d 96 (1983) (holding that prosecutorial misconduct was harmless in the face of overwhelming evidence of guilt); *see also United States v. Rodriguez*, 43 F.3d 117, 124 (5th Cir. 1995) ("To warrant reversal of a conviction, prosecutorial misconduct must be so pronounced and persistent that it casts serious doubts upon the correctness of the jury's verdict.").

We similarly decline to reverse Breeland's conviction based on the allegedly erroneous admission of Government Exhibit 2, a National Firearms Registration and Transfer Record certificate offered to prove that Breeland's firearm was not registered to him. The certificate contained the erroneous statement that the serial number on the weapon had been obliterated (in fact, it had been manufactured without a serial number).  Even if this statement improperly prejudiced the jury, as Breeland contends, its admission was harmless in light of the overwhelming proof of Breeland's guilt.  *See Schneble v. Florida*, 405 U.S. 427, 432, 92 S. Ct. 1056, 1060, 31 L. Ed. 2d 340 (1972) ("[U]nless there is a reasonable

---

[10]     The only issue with respect to Count One that Breeland contested at trial was the legal question of whether his sawed-off shotgun was a "firearm" within the meaning of the Act; he did not contest any factual issues relating to his guilt.

possibility that the improperly admitted evidence contributed to the conviction, reversal is not required."); *United States v. Tomblin*, 46 F.3d 1369, 1388 (5th Cir. 1995) (holding that erroneous admission of improper and prejudicial evidence did not require reversal "because the jury would have returned a verdict of guilty against [the defendant] even without the prejudicial testimony"); *United States v. Washington*, 44 F.3d 1271, 1283 (5th Cir. 1995) (holding that any error that court may have made in admitting inadmissible evidence was harmless because government presented overwhelming evidence establishing defendant's guilt).[11]

III

For the foregoing reasons, we **AFFIRM** Breeland's conviction.

---

[11] The remainder of Breeland's arguments are frivolous. Breeland argues that the district court erred in refusing to provide the jury with seven supplemental instructions that he offered. "We review jury instructions for abuse of discretion." *Tomblin*, 46 F.3d at 1378. "The refusal to give a jury instruction constitutes error only if the instruction (1) was substantially correct, (2) was not substantially covered in the charge delivered to the jury, and (3) concerned an important issue so that the failure to give it seriously impaired the defendant's ability to present a given defense." *United States v. Pennington*, 20 F.3d 593, 600 (5th Cir. 1994). With the exception of "Supplemental Jury Instruction No. 4," Breeland's proposed instructions are quotations from cases and regulations that are irrelevant to his conviction on Count One. Breeland's fourth supplemental instruction defined "shotgun" and is identical in all relevant respects to the court's instruction. Because Breeland's supplemental instructions were either irrelevant to Count One or identical in all relevant respects to the court's instructions, we conclude that the court did not abuse its discretion in rejecting Breeland's seven supplemental instructions.

Breeland's appeal from the district court's refusal to dismiss his court-appointed counsel is similarly frivolous. Breeland asked the district court for new counsel because he believed that the Government had intimidated his appointed counsel. Without citing any authority, Breeland contends that "[t]he federal constitution guarantees a criminal defendant the right to counsel, either retained or appointed, which includes within its scope the right to counsel of one's choice." We have repeatedly held that the right to counsel guaranteed by the Sixth Amendment *does not* include the right to counsel of one's choice. *See, e.g., Yohey v. Collins*, 985 F.2d 222, 228 (5th Cir. 1993); *United States v. Norris*, 780 F.2d 1207, 1211 (5th Cir. 1986); *United States v. Magee*, 741 F.2d 93, 94 (5th Cir. 1984).