LEE, C.J.,
for the Court:
PROCEDURAL HISTORY
¶ 1. On September 30, 2010, James Ludwig entered a nolo contendere plea in Madison County Justice Court to one count of driving under the influence (DUI), first offense, and one count of careless driving. Ludwig appealed to Madison County County Court where, after a trial de novo, he was convicted of both charges. On the DUI conviction, Ludwig was sentenced to forty-eight hours in the county jail, but the sentence was suspended provided he complete two years of probation in addition to completion of the Mississippi Alcohol Safety Education Program, and he was ordered to pay a $900 fine. On the careless-driving charge, Ludwig was ordered to pay court costs and a $25 fine. Ludwig then appealed to the Madison County Circuit Court, which affirmed the county court’s conviction and sentence. Ludwig now appeals to this Court, asserting the following issues: (1) the county court erred in allowing the calibration certificate of the Intoxilyzer 8000 into evidence; (2) there was no probable cause to stop his car that night; and (3) the evidence was insufficient to support his conviction for DUI, first offense.
FACTS
¶ 2. Around 8:00 p.m. on March 17, 2010, Lieutenant Tony Murphy, with the Madison County Sheriffs Office, was driving to assist Deputy Mark Sandridge with a traffic stop on 1-220 in Madison County, Mississippi, when he noticed a truck pass dangerously close to Deputy Sandridge. Deputy Sandridge was standing at the driver’s side window of the car he had stopped. Deputy Sandridge did not remember a truck passing that closely to him at that time. Lieutenant Murphy followed the truck and observed it run off the road onto the shoulder. This occurred in the area where 1-220 turns into 1-55 North, near the Natchez Trace exit. Lieutenant Murphy then activated his blue lights and saw Ludwig’s truck run off the road into the shoulder a second time on the exit ramp to the Natchez Trace Parkway.
¶ 3. Lieutenant Murphy approached the driver of the truck, identified as Ludwig, and informed Ludwig he was stopped for running off the road. Ludwig admitted to Lieutenant Murphy that he had run off the road onto the shoulder. Lieutenant Murphy testified that he smelled alcohol emanating from the truck and noticed Ludwig’s eyes were glassy and bloodshot. Lieutenant Murphy then asked Ludwig how much alcohol he had consumed that night. Ludwig responded that he had consumed two beers, two shots of whiskey, and a margarita in addition to a burrito, chips, and salsa at a Mexican restaurant in Clinton, Mississippi. Ludwig was returning to his apartment in Ridgeland, Mississippi. Lieutenant Murphy called Deputy Sandridge, a DUI enforcement officer, to the scene to assist. While waiting for Deputy Sandridge, Lieutenant Murphy performed a portable breath test on Ludwig. The test was positive, indicating the presence of alcohol.
¶ 4. Deputy Sandridge arrived at the scene around 8:30 p.m. and proceeded to conduct field-sobriety tests on Ludwig. Deputy Sandridge testified that Ludwig smelled like alcohol, his speech was *1232 slurred, his face was flushed, he swayed while standing, and his eyes were bloodshot and watery. Ludwig told Deputy Sandridge he started drinking around 5:30 p.m. and finished at approximately 7:45 p.m. Ludwig submitted to several field-sobriety tests, including the horizontal-gaze nystagmus (HGN), the one-leg-stand test, and the walk-and-turn test. Deputy Sandridge also performed a portable breath test on Ludwig. Taking into account the totality of the circumstances, Deputy Sandridge arrested Ludwig for DUI, first offense.
¶ 5. After arriving at the Madison County Jail, Deputy Sandridge administered two Intoxilyzer 8000 tests on Ludwig, the first at 9:27 p.m. and the second at 9:29 p.m. The tests indicated Ludwig’s blood-alcohol content (BAC) was .10%.
¶ 6. Dr. Steven Hayne testified in Ludwig’s defense as an expert in clinical, anatomic, and forensic pathology. Dr. Hayne calculated that if Ludwig’s BAC was .10% around 9:30 p.m., then based upon the relevant data, his BAC would have been .067% at 8:15 p.m. and .083% at 8:30 p.m.
¶ 7. Ludwig testified that he only remembered driving off the road onto the shoulder one time, and it was after he saw blue lights and heard a police siren. Ludwig further stated he did not remember driving too closely to Deputy Sandridge.
DISCUSSION
I. AUTHENTICITY OF CALIBRATION CERTIFICATE
¶ 8. In his first issue on appeal, Ludwig contends the State failed to prove the person certifying the truthfulness of the In-toxilyzer 8000 certificate of calibration had reviewed the document; thus, the signature on the certificate was not authentic. Over Ludwig’s objection, the State introduced two calibration certificates, one dated prior to Ludwig’s DUI and the other dated after his DUI. Each certificate found the specific machine used on Ludwig to be in working condition and the calibration to have “met acceptable standards of accuracy.” These documents were certified by Maury Phillips, section chief of the Implied Consent Section of the Mississippi Crime Lab. The certificates contained a stamp with Phillips’s signature. The certificates also contained the signature of the operator, Wendy Hathcock. Hathcock was Phillips’s deputy at the crime lab.
¶ 9. Ludwig claims Phillips’s signature was stamped on by a third party; therefore, the certificates were not self-authenticating and not admissible. However, if the calibration certificates bear the seal of the crime lab and the signature of the one attesting to the truth of their contents, then the certificates are considered self-authenticating. Pulliam v. State, 856 So.2d 461, 464-65 (¶¶ 12-13) (Miss.Ct.App.2003). Furthermore, “[njothing in the rules suggests] that when an official public record has been admitted, that the party offering the document still must prove the authority of the person named in the certificate.” Callahan v. State, 811 So.2d 420, 423 (¶ 14) (Miss.Ct.App.2001). There is no genuine issue as to the authenticity of the signatures on the calibration certificates; thus, this issue is without merit.
II. PROBABLE CAUSE
¶ 10. In his next issue on appeal, Ludwig claims Lieutenant Murphy did not have probable cause to make the initial traffic stop. Ludwig implies that Lieutenant Murphy’s account of the evening is untrustworthy for two reasons: first, Deputy Sandridge did not notice Ludwig’s truck as it passed close by him; and second, Deputy Sandridge was unaware Lieutenant Murphy witnessed Ludwig’s truck *1233 run off the road where 1-220 turns into I-55 north.
¶ 11. The careless-driving statute, Mississippi Code Annotated section 68-3-1213 (Rev.2004), states in part:
Any person who drives any vehicle in a careless or imprudent manner, without due regard for the width, grade, curves, corner, traffic and use of the streets and highways[,] and all other attendant circumstances is guilty of careless driving. Careless driving shall be considered a lesser offense than reckless driving.
¶ 12. As a general rule, “the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred.” Whren v. United States, 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). “Carelessness is a matter of reasonable interpretation, based on a wide range of factors.” Henderson v. State, 878 So.2d 246, 247 (¶ 8) (Miss.Ct.App.2004). During trial, Lieutenant Murphy testified he saw Ludwig’s truck pass so close to Deputy Sandridge that “the mirror could have struck the officer” and then run off the road onto the shoulder. We find that the reasons articulated by Lieutenant Murphy were sufficient to find probable cause for a traffic stop based on careless driving. This issue is without merit.
III. SUFFICIENCY OF THE EVIDENCE
¶ 13. In his final issue on appeal, Ludwig contends the evidence was insufficient to support his DUI conviction. “[T]he critical inquiry is whether the evidence shows ‘beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed[.]’ ” Bush v. State, 895 So.2d 836, 843 (¶ 16) (Miss.2005) (citation omitted). If, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found, beyond a reasonable doubt, that the essential elements of the crime existed, this Court will affirm the conviction. Id.
¶ 14. Ludwig’s sole contention is that he may have been intoxicated at 9:27 p.m., but he was not over the legal limit while he was driving approximately one hour earlier. Ludwig refers to Dr. Hayne’s retrograde-extrapolation theory,[1] which showed Ludwig’s BAC to be .067% at 8:15 p.m. and .083% at 8:30 p.m. Dr. Hayne’s testimony is somewhat confusing, as he also stated, “At 8:30, [Ludwig’s] alcohol level was 0.083 with a range of 0.071 to 0.077.” Ludwig was charged pursuant to Mississippi Code Annotated section 63 — 11— 30 (Supp.2012), which states:
(1) It is unlawful for any person to drive or otherwise operate a vehicle within this state who (a) is under the influence of intoxicating liquor; ... [or] (c) has an alcohol concentration of eight one-hundredths percent (.08%) or more for persons who are above the legal age to purchase alcoholic beverages under state law....
According to this statute, a defendant can be charged and convicted for driving under the influence by the testimony of a witness who observed the defendant exhibiting *1234 signs of intoxication, or by the results of an Intoxilyzer test. The record mostly contains references to section 63-11-80 without specific cites to the applicable subsection. The traffic citation indicates Ludwig violated section 63 — 11—30(l)(a) and (c). The judgment of conviction in the county court indicates the county court judge found “there [was] a factual basis which establishes [Ludwig’s] guilt beyond a reasonable doubt under [s]ection 63-11-19(a).... ” Although the judgment referenced section 63 — 11—19(a), we consider this to be a clerical error, and the judgment was intended to reference section 63 — 11— 30(l)(a).
¶ 15. The Intoxilyzer tests indicated Ludwig’s BAC at 9:27 p.m. was .10%. There is no requirement that the State must prove a defendant’s exact BAC at the time of the incident, only that the defendant’s BAC was equal to or above the legal limit. See Smith v. State, 942 So.2d 308, 314-15 (¶¶ 15-16) (Miss.Ct.App.2006) (BAC test was relevant and admissible despite being administered over four hours after accident). Regardless, Lieutenant Murphy stated that Ludwig admitted to drinking two beers, two shots of whiskey, and one margarita. Deputy Sandridge testified that Ludwig smelled like alcohol, his speech was slurred, his face was flushed, he swayed while standing, and his eyes were bloodshot and watery. After conducting field-sobriety tests on Ludwig, Deputy Sandridge decided to arrest him for DUI. From the evidence presented, we find there was sufficient evidence to find Ludwig guilty of DUI, first offense. This issue is without merit.
¶ 16. THE JUDGMENT OF THE MADISON COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I, DRIVING UNDER THE INFLUENCE, FIRST OFFENSE, AND SENTENCE OF FORTY-EIGHT HOURS IN THE MADISON COUNTY JAIL, WITH THE SENTENCE SUSPENDED WHILE ON TWO YEARS’ PROBATION, AND TO PAY A $900 FINE; AND COUNT II, CARELESS DRIVING, AND TO PAY A $25 FINE IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
IRVING, P.J., BARNES, ISHEE, CARLTON, FAIR AND JAMES, JJ., CONCUR. GRIFFIS, P.J., AND MAXWELL, J., CONCUR IN PART AND IN THE RESULT. ROBERTS, J., CONCURS IN RESULT ONLY.

. "Retrograde extrapolation" has been described as "a scientific method of making a determination of the BAC at a particular point in time by predicting an earlier unknown value by calculating a known later value with a series of generally used average values, and projecting that result back in time.” Evans v. State, 25 So.3d 1061, 1065 (¶ 9) (Miss.Ct.App.2008) (citation and internal quotation omitted). The Mississippi Supreme Court noted in Evans v. State, 25 So.3d 1054, 1058 n. 5 (Miss.2010), that it had “not yet ruled on the admissibility of such testimony.”