# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-60149

UNITED STATES OF AMERICA,

United States Court of Appeals
Fifth Circuit

**FILED**

November 14, 2014

Lyle W. Cayce
Clerk

Plaintiff - Appellant

v.

RENIERI JOEL ROSALES-GIRON,

Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:13-CR-96-1

Before SMITH, BARKSDALE, and HAYNES, Circuit Judges.

PER CURIAM:*

This interlocutory appeal concerns the district court's granting Renieri Rosales-Giron's motion to suppress, regarding a Mississippi Highway Patrolman's conducting a traffic stop of Rosales' vehicle. Primarily at issue is whether the Trooper had probable cause to believe Rosales committed a traffic violation (careless driving), justifying the stop. REVERSED and REMANDED.

---

* Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

**I.**

The following factual recitation is based on evidence presented by the Government (testimony by the Trooper and his video recording of Rosales' vehicle) at the hearing on the suppression motion. Rosales did not present evidence.

The Trooper was assigned to the Highway Patrol's Traveling Criminal Apprehension Program, which focuses on interstate criminal activity. On 23 October 2013, he was in the median of Interstate 20 at mile-marker 61 in Rankin County, Mississippi. In the median, his vehicle was surrounded by an open area with an unobstructed view of oncoming and passing traffic. While observing eastbound traffic, the Trooper heard the sound of an eastbound vehicle driving on the rumble strips (the indentations on the side of the road that alert drivers to alter their trajectory), outside (to the right of) the fog line (a white line on the right side of the right lane on a highway). Because this rumbling "caught [his] eye", the Trooper concluded the vehicle had run off the road.

Based on his training, the Trooper was suspicious of the vehicle, a van. He knew perpetrators of crimes involving highway transportation of illegal drugs and aliens often operate with two vehicles: the first serves as a decoy to attract the attention of law-enforcement officers, while the second perpetrates the principal offense, such as transporting drugs or aliens. Consequently, the Trooper waited about one minute to pursue the van, after concluding another vehicle was not following it.

After reaching the van in approximately one minute, the Trooper drove side-by-side with it and observed it move over onto the fog line. (The Trooper was unable to see into the van because its windows were tinted black.) He then changed lanes, drove behind the van, and activated his vehicle's bar light (blue). A video camera displaying a Trooper's view from the front of his vehicle activates automatically when the vehicle's bar light is activated. (The Trooper could not recall whether he manually initiated the recording or whether it commenced

No. 14-60149

because he activated the bar light.) Subsequently, the Trooper observed the van drive on ("hit" or "bump") the fog line (depicted in the video recording), which prompted him to conduct the stop.

The Trooper stopped the van for careless driving, a violation of Mississippi law. Miss. Code Ann. § 63-3-1213 ("Any person who drives any vehicle in a careless or imprudent manner, without due regard for the width, grade, curves, corner, traffic and use of the streets and highways and all other attendant circumstances is guilty of careless driving."). Rosales was the driver of the van. The Trooper issued him a warning citation for, *inter alia*, careless driving. During the stop, the Trooper discovered numerous individuals in Rosales' vehicle, later claimed to be illegal aliens.

On 23 November 2013, Rosales was charged in a single-count indictment with transporting aliens for the purpose of commercial advantage or private gain, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii). He moved to suppress the evidence discovered during the stop. In that regard, as expressed during the suppression hearing, Rosales challenged only whether the initial stop was lawful, not any of the conduct following the stop.

In his suppression-hearing testimony, the Trooper explained why he stopped Rosales. The Trooper justified the stop based only on violations of Mississippi's careless-driving statute, which he explained occurred three times: Rosales drove on the rumble strips, outside of the fog line, when he passed the Trooper at mile-marker 61; and Rosales hit or bumped the fog line twice after the Trooper began following him–while the Trooper and Rosales were side-by-side and later, when the Trooper was behind Rosales while the video camera was recording. Concerning the Trooper's observing Rosales' hitting the fog line, the Government asked the Trooper: "So did he run off the side of road more than once before you stopped him?" He replied: "Yes. He was weaving once I pulled out on him as well. He hit [the fog line] a couple of times."

3

No. 14-60149

The video recording made by the Trooper was shown during the hearing, with his being questioned about it while it was being shown. As noted, Rosales did not present evidence.

In ruling from the bench, the district court stated: "I would have a hard time sustaining the ticket for careless driving when the driver didn't run off the road" and "ran over the fog line because the Trooper was riding along – beside him. That would make me nervous to have . . . a trooper riding beside me for an extended period of time". Regarding the vehicles being side-by-side, the court found, *inter alia*, that Rosales "simply moved over and happened to run onto the fog line". The court stated to the Government: "You'd be raising Cain with the judge if you got a ticket for deviating six inches . . . onto the white [fog] line . . . , wouldn't you?" In granting the motion, the court ruled: "There just simply was not enough carelessness in this to be a danger to anybody".

The Government's motion for reconsideration was denied. *United States v. Rosales*, No. 13-CR-96 (WHB-FKB), slip op. at 1-4 (S.D. Miss. 26 Feb. 2014) (unpublished). In doing so, the court elaborated on its rationale for suppressing the evidence: the Trooper lacked credibility because, first, he could not have heard Rosales' vehicle driving on the rumble strips when it passed him at mile-marker 61; second, Rosales' driving on the fog line once without other evidence of unsafe or impaired driving was insufficient to justify a stop (was not careless driving); and third, the Trooper's actions in following the van did not support the reason provided for the stop by the Trooper – the court stated that, instead of stopping the van promptly, the Trooper stopped the van because of the Trooper's extensive experience and only after he followed Rosales for a considerable distance, noted the van's out-of-state license plate, and observed Rosales' ethnicity. (But regarding ethnicity, and as noted, the Trooper was unable to see into the van because its windows were tinted black.)

4

No. 14-60149

## II.

Pursuant to 18 U.S.C. § 3731 ("An appeal by the United States shall lie to a court of appeals from a decision . . . of a district court suppressing or excluding evidence . . . in a criminal proceeding . . . ."), we have jurisdiction for this interlocutory appeal.  It goes without saying that, generally, "[t]he government may not use evidence obtained in violation of the Fourth Amendment's prohibition against unreasonable searches and seizures to prove a defendant's guilt at trial". *United States v. Breeland*, 53 F.3d 100, 102 (5th Cir. 1995).

In appeals concerning suppression of evidence, the district court's legal conclusions are reviewed *de novo*; its findings of fact, for clear error.  *E.g., United States v. Jenson*, 462 F.3d 399, 403 (5th Cir. 2006) (citation omitted).  "A finding of fact is clearly erroneous when[,] although there is evidence to support it, the reviewing court on the entire evidence is left with a firm and definite conviction that a mistake has been committed."  *United States v. Gomez-Moreno*, 479 F.3d 350, 354 (5th Cir. 2007) (citation and quotation marks omitted).

As reflected in the clear-error standard, district courts are afforded substantial deference in their factual determinations, especially when, as here, they involve credibility assessments derived from live testimony.  *E.g., United States v. Robinson*, 741 F.3d 588, 594 (5th Cir. 2014) (citation omitted).  The court not only observed, but questioned, the Trooper during the hearing and, as stated in the denial of the Government's motion to reconsider, was "not convinced that the testimony of the [T]rooper was credible", referencing:  the first claimed offense, when Rosales drove by the Trooper at mile-marker 61 (the court "doubt[ed]" the Trooper could hear the van driving on the rumble strips); the Trooper's making the stop based on careless driving; and the stop, in the court's view, being based, instead, on other factors, such as the van's out-of-state tag.

For the first time on appeal, Rosales asserts the rumble strips were inside the fog line; therefore, according to Rosales, the Trooper's testimony that he heard

5

Rosales drive on the strips does not mean Rosales necessarily crossed the fog line. We will not consider this fact-based issue, which was not raised in district court in support of Rosales' motion to suppress. *E.g., United States v. Pope*, 467 F.3d 912, 918-19 & n.20 (5th Cir. 2006). (Even if we were to review the issue instead for plain error, it would fail because, for such questions of fact, they cannot provide a basis for plain (clear or obvious) error. *E.g., United States v. McCaskey*, 9 F.3d 368, 376 (5th Cir. 1993) (resolution of a factual issue not presented to the district court cannot be plainly erroneous in sentencing context).)

For resolving this appeal, we need consider only the third claimed offense, which was recorded in, and verified by, the video while the Trooper was following the van, subsequent to having been beside it: the Trooper testified the van hit, or bumped, the fog line. In short, was this sufficient to justify the traffic stop? If it was, it is not necessary, as explained *infra*, to engage in a balancing analysis to determine whether the stop was otherwise justifiable based on reasonable suspicion. Accordingly, it would not be necessary to decide whether the district court clearly erred in finding, *inter alia*: the Trooper did not hear the van drive on the rumble strips at mile-marker 61; and, during the side-by-side instance, it was reasonable for the van to "[run] over on the fog line because the [T]rooper was riding . . . beside [it] . . . . for an extended period of time". (Accordingly, contrary to the position taken by the dissent at 2, we do not "reverse the district court based upon testimony of the [T]rooper as the district court is entitled to make the credibility determinations based upon its live assessment of the witness". As stated, regarding the third violation provided by the Trooper, the video shows the fog line was hit. *United States v. White*, 401 U.S. 745, 753 (1971) ("An electronic recording will many times produce a more reliable rendition . . . than will the unaided memory of a police agent."); *see also United States v. Vickers*, 442 F. App'x 79, 86, 87 & n.7 (5th Cir. 2011) (no error in disregarding witness' testimony when testimony conflicted with video evidence). Likewise, despite the

dissent's concerns at 6, remand is not required for the district court to clarify its findings of fact and conclusions of law.)

"The reasonableness of traffic stops and investigative detentions of motorists who are suspected of criminal activity is analyzed under the framework established in *Terry v. Ohio*, 392 U.S. 1 (1968)." *United States v. Stevens*, 487 F.3d 232, 244 (5th Cir. 2007) (citing cases). "Under *Terry*, we determine the reasonableness of an investigative stop by examining: (1) whether the officer's action of stopping the vehicle was justified at its inception, and (2) whether the officer's actions were reasonably related in scope to the circumstances that justified the stop." *Id.* (citing *Terry*, 392 U.S. at 19-20). As noted, during the suppression hearing, Rosales expressly declined to contest the second prong of *Terry*, contesting only whether the stop was justified at its inception. Accordingly, we consider only the first prong of *Terry*.

For a traffic stop to be justified at its inception, an officer need only have reasonable suspicion that "some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle". *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005) (citing *Breeland*, 53 F.3d at 102). "Reasonable suspicion" analysis requires assessing the totality of the circumstances to ascertain the reasonableness of the suspicion. *United States v. Powell*, 732 F.3d 361, 369 (5th Cir. 2013) (citation omitted). This is consistent with the "touchstone of Fourth Amendment analysis [being] reasonableness", which "requires a balancing of the public interest with an individual's right to be free from arbitrary intrusions by law enforcement". *United States v. Brigham*, 382 F.3d 500, 507 (5th Cir. 2004) (en banc) (citations omitted).

In that regard, the Supreme Court held unanimously in *Whren v. United States*, 517 U.S. 806 (1996): "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Id.* at 810. "Probable cause exists when the totality

of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed, or was in the process of committing, an offense." *United States v. Zavala*, 541 F.3d 562, 575 (5th Cir. 2008) (quoting *United States v. Castro*, 166 F.3d 728, 733 (5th Cir. 1999) (en banc)). Therefore, probable cause to make a traffic stop exists, *inter alia*, when a defendant commits a traffic violation and a law-enforcement officer observes the violation. *E.g., United States v. Khanalizadeh*, 493 F.3d 479, 482 (5th Cir. 2007). "Where probable cause has existed, the only cases in which we have found it necessary actually to perform the 'balancing' analysis involved searches or seizures conducted in an extraordinary manner, unusually harmful to an individual's privacy or even physical interests . . . ." *Whren*, 517 U.S. at 818. An "extraordinary-manner" exception is neither asserted, nor applicable, in this instance.

As is well known, "[t]he rule established by the Supreme Court in *Whren* allows officers to justify a stop by the occurrence of a traffic violation even though this is not the real reason for the stop", *United States v. Cole*, 444 F.3d 688, 689 (5th Cir. 2006); but, on the other hand, the legal justification for the traffic stop must be "objectively grounded", *id.* (citation omitted). As noted, the district court concluded, *inter alia*, that the third claimed careless-driving offense, documented in the video recording, when Rosales hit the fog line, did not justify the stop.

The Mississippi Court of Appeals, however, has found probable cause for a careless-driving violation based on hitting, or bumping, the fog line. In 2004, it ruled a court must reasonably interpret a wide range of factors when determining carelessness under the careless-driving statute. *Henderson v. State*, 878 So. 2d 246, 247 (Miss. Ct. App. 2004). Subsequently, the court held an officer's stating a driver bumped the fog line was sufficient to constitute probable cause to stop the driver for careless driving. *Dominick v. State*, 108 So. 3d 452, 455-56 (Miss. Ct. App. 2012) (probable cause existed where an officer testified the defendant's car

bumped the fog line prior to changing lanes and a review of videotape evidence did not contradict the officer's testimony); *Martin v. State*, 43 So. 3d 533, 535 (Miss. Ct. App. 2010) ("[T]he circuit court judge stated that[,] by his understanding of the rules of the road, hitting the fog line while driving clearly constituted probable cause for an officer to perform a traffic stop", and "the circuit court did not err in finding that probable cause existed for the traffic stop".).

The underlying facts of these cases include additional incidences of carelessness, such as swerving or quickly driving back-and-forth, but they do not distinguish the importance of each violation in finding probable cause. *See*, *e.g.*, *Martin*, 43 So. 3d at 535. Mississippi's careless-driving statute is broadly worded to encompass drivers who fail to exercise "due regard for the width . . . of the streets and highways", the offense for which the Trooper stopped Rosales. Miss. Code Ann. § 63-3-1213. We conclude from this broad language and the cited cases that a traffic stop for careless driving is justified in Mississippi when a law-enforcement officer observes an automobile hit the fog line. (The dissent fails to cite a Mississippi decision that holds a stop for careless driving is unjustified when a driver hits the fog line only once. Contrary to the dissent's statement at 3, note 2, our noting this failure is not a "suggestion that [the dissent] need[s] the support of a Mississippi case [with that] holding"; on the other hand, the dissent's failure to do so adds weight to our holding that there was probable cause for the stop in this instance after the van hit the fog line only once.) But, even if more is required (as the dissent urges at 3-6), such additional factors exist preceding the third claimed offense, such as the van's weaving when the Trooper pulled out from the median, and the van's later hitting the fog line when the Trooper's vehicle was beside the van. (For that side-by-side instance, although the court ruled it was reasonable for the van to do so in those circumstances, it nevertheless found the van ran on the fog line. Regarding a driver's reaction in the presence of a law-enforcement vehicle, the dissent at 5–6, and note 5 at 6, fails to cite *United States*

*v. Escalante*, 239 F.3d 678, 681 (5th Cir. 2001).  There, it was claimed the Deputy caused defendant to weave.  But, in addition to stating defendant's "arguments ha[d] persuasive force", our court "recognize[d]" the Deputy had an equally valid position:  a driver would not swerve even if an officer's vehicle was "approaching from behind".  *Id.*  Our court then stated, "[i]ndeed, perhaps the prudent driver should be more careful to maintain his lane in such a situation", and held it could not conclude probable cause was lacking for the stop.  *Id.*)

Therefore, the district court erred in granting the motion to suppress by holding no reasonable law-enforcement officer would conduct a stop under these circumstances.  This is the exact issue *Whren* resolved by holding an officer may conduct a stop where probable cause exists, 517 U.S. at 810; and probable cause to conduct a stop exists when law enforcement officers observe traffic violations, *e.g., Khanalizadeh,* 493 F.3d at 482.  Although the Trooper only issued Rosales a warning citation for careless driving, it nevertheless was issued because the Trooper observed Rosales drive carelessly.  Based on the third claimed offense, and pursuant to Mississippi's careless-driving statute, the requisite probable cause existed for the stop.

Along that line, and as discussed *supra*, in granting the suppression motion, the district court also addressed the Trooper's subjective intentions as a trained highway law-enforcement officer and the suspicions that arose from such training.  Although, in denying the Government's motion to reconsider, the court expressly eschewed reliance on the Trooper's subjective intentions, it proceeded to discuss the Trooper's experienced-based suspicions and Rosales' ethnicity as reasons for suppressing the evidence.  As also discussed *supra*, this constituted error.  *Whren*, 517 U.S. at 813 ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis."); *see also*, *e.g.*, *Cole*, 444 F.3d at 689 (test for traffic-stop legality is objective).

## III.

For the foregoing reasons, the suppression order is REVERSED, and this matter is REMANDED to district court for further proceedings.

No. 14-60149

HAYNES, Circuit Judge, dissenting:

The majority opinion correctly notes that we review the district court's factual findings for clear error and its legal conclusions de novo. *See United States v. Jenson*, 462 F.3d 399, 403 (5th Cir. 2006). However, the majority opinion fails to give appropriate deference to the district court's credibility determinations and resulting factual findings and also incorrectly assesses Mississippi law. Viewed properly, the district court order did not commit reversible error in its order suppressing evidence. Accordingly, I respectfully dissent.

We must review the district court's findings of fact for clear error, only disregarding them when, "on the entire evidence[,] [this court] is left with a *firm and definite conviction* that a mistake has been committed." *United States v. Gomez-Moreno*, 479 F.3d 350, 354 (5th Cir. 2007) (citation and internal quotation marks omitted) (emphasis added); *see United States v. Raney*, 633 F.3d 385, 389 (5th Cir. 2011) ("A factual finding is not clearly erroneous as long as it is plausible in light of the record as a whole." (citation and internal quotation marks omitted)). When factual findings derive from live testimony and credibility determinations, district courts are afforded even more deference. *See, e.g.*, *United States v. Robinson*, 741 F.3d 588, 594 (5th Cir. 2014); *United States v. Gibbs*, 421 F.3d 352, 357 (5th Cir. 2005) ("'One of the most important principles in our judicial system is the deference given to the finder of fact who hears the live testimony of witnesses because of his opportunity to judge the credibility of those witnesses.'" (quoting *Louis v. Blackburn*, 630 F.2d 1105, 1109 (5th Cir. 1980))). Finally, we "may affirm on any basis established by the record, considering the evidence presented at the suppression hearing in the light most favorable to the prevailing party." *United States v. Aguirre*, 664 F.3d 606, 610 (5th Cir. 2011) (citations and

12

internal quotation marks omitted); *United States v. Scroggins*, 599 F.3d 433, 440 (5th Cir. 2010) (citations and internal quotation marks omitted).

Two pieces of evidence are relevant to the determination of the propriety of this stop and resultant findings:  the trooper's testimony and the videotape he recorded.  The district court found the trooper not to be credible:  it was "not convinced that the testimony of the trooper was credible."  Thus, we cannot reverse the district court based upon testimony of the trooper as the district court is entitled to make the credibility determinations based upon its live assessment of the witness.  *See Robinson*, 741 F.3d at 594; *Gibbs*, 421 F.3d at 357.

Turning to the video, it shows Rosales-Giron's van driving close to the right-hand edge of the lane, but does not definitively show the van touching the fog line; it certainly does not show the van swerving within its lane or crossing the fog line.  We should defer to the district court's findings that "the only justification that this officer makes for stopping this particular car" was, as "the video shows[,] that while the trooper was up beside the van, the van didn't swerve; simply moved over and happened to run onto the fog line."[1] Accordingly, under a particularly deferential clear error standard, I am certainly not left with a firm and definite conviction that the district court erred in finding, at most, a "run onto the fog line."

Considering only this alleged violation as we are bound to do, it becomes clear that, at most, "while the trooper was up beside the van, the van didn't swerve; simply *moved over and happened to run onto the fog line.*" (emphasis

---

[1] The district court appears to be referring to the first part of the video, from about 0 to 10 seconds.  At that point, the video shows the trooper's car traveling very close to the centerline as the van gradually comes into view, with the van driving closer to the fog line and keeping a distance between itself and the trooper's car as the trooper's car drops behind the van.

added).  The trooper admitted during the hearing that, during all of the violations he alleged, the van was only "on [the fog line].  I don't know that [the van] crossed it, but [it] hit it."  Thus, we turn to the question of law:  whether one instance of hitting or moving onto the fog line constitutes careless driving under Mississippi law.  It does not.  A careful reading of Mississippi case law interpreting the careless driving statute shows that simply bumping or hitting the fog line by itself does not suffice to justify a careless-driving finding; instead, all the cases involve additional conduct.  *See generally* MISS. CODE ANN. § 63-3-1213.[2]

Indeed, every single Mississippi case supporting a finding of careless driving involves more serious and imprudent conduct than bumping the fog line one time.[3]  Even in cases upholding traffic stops based on the most

---

[2] I disagree with the majority opinion's suggestion that I need the support of a Mississippi case holding that bumping the fog line once does *not* justify a stop in order to affirm the district court's conclusion that the stop was unreasonable under the Fourth Amendment.  The touchstone of our Fourth Amendment analysis is reasonableness, considering how state law classifies the allegedly illegal conduct.  *See Ohio v. Robinette*, 519 U.S. 33, 39 (1996) ("We have long held that the touchstone of the Fourth Amendment is reasonableness.  Reasonableness, in turn, is measured in objective terms by examining the totality of the circumstances." (citations and internal quotation marks omitted)).  When we give proper deference to the trial court's factual findings, Rosales-Giron's conduct included only one bump of the fog line.  Since no Mississippi court has found a careless driving stop justified for just one bump of the fog line without additional conduct, I agree with the district court's conclusion that it was objectively unreasonable for the trooper to stop Rosales-Giron's van under the totality of the circumstances.

[3] *See, e.g.*, *Ludwig v. State,* 122 So. 3d 1229, 1231–33 (Miss. Ct. App. 2013) (finding probable cause where a defendant drove so close to the edge of the road that "the mirror could have struck the officer" standing there conducting a traffic stop, before the vehicle ran off the road onto the shoulder twice and the defendant admitted to running off the road (internal quotation marks omitted)); *Shelton v. State*, 45 So. 3d 1203, 1208–09 (Miss. Ct. App. 2010) (finding probable cause where a vehicle crossed the fog line, then overcompensated to cross the lane-dividing lines, then repeated this pattern); *Drummer v. State*, 42 So. 3d 563, 564–65 (Miss. Ct. App. 2009) (finding probable cause where a vehicle weaved from the outside of the lane and across the center yellow lines more than once in a residential area); *Loveless v. City of Booneville*, 972 So. 2d 723, 724–25, 731 (Miss. Ct. App. 2007) (finding probable cause where a vehicle blared loud music at a stop sign, then crossed the centerline of the road with both driver's side tires as it proceeded down the road).

minimal conduct, drivers at least weaved or definitively crossed the fog line, rather than simply bumping it. *See, e.g.*, *Williams v. State*, 126 So. 3d 85, 89 (Miss. Ct. App. 2013) (finding reasonable suspicion justified a traffic stop where a vehicle "weave[d] out of [its] lane of traffic and across the fog line"); *Tran v. State*, 963 So. 2d 1, 13–14 (Miss. Ct. App. 2006) (holding officer had a reasonable basis to stop a motorist for "crossing the fog line" and that "failure to have regard for the width and use of the street by *swerving off the side of the road* or *crossing* the marker lines constitutes probable cause for a traffic stop") (emphasis added), *aff'd sub nom. Quang Thanh Tran v. State*, 962 So. 2d 1237 (Miss. 2007); *Adams v. City of Booneville*, 910 So. 2d 720, 721, 725 (Miss. Ct. App. 2005) (finding probable cause for a careless-driving stop in the totality of the circumstances, considering the defendant's car was "traveling in the middle of two lanes of traffic" and "swerv[ing]" "around 2:30 a.m." on "New Year's Day"); *Saucier v. City of Poplarville*, 858 So. 2d 933, 934 (Miss. Ct. App. 2003) (finding probable cause where a vehicle decreased its speed, "bump[ed] the centerline," then crossed "into the center lane and jerked . . . back into the right lane"). No Mississippi case validating a careless-driving traffic stop involves only the minimal conduct present here.[4]

The majority opinion also cites a case for the proposition that under Mississippi law, "a court must reasonably interpret a wide range of factors when

---

[4] In *Dominick v. State*, the trial court credited an officer's testimony that a car changed lanes, "bumped or simply rode the fog line," and then changed lanes again, "bump[ing] the center line to the right" after changing lanes. 108 So. 3d 452, 456 (Miss. Ct. App. 2012) (internal quotation marks omitted). The Mississippi Court of Appeals acknowledged that the trial judge had credited the officer's testimony, that video evidence proved unclear, and that nothing contradicted the officer's testimony before affirming the trial court's finding that the officer had probable cause to stop the vehicle. *Id.* In *Martin v. State*, a trooper observed a car swerve and drift over the fog line: the "vehicle went from point A to point B and right back. [It] didn't [simply] drift over to the fog line." 43 So. 3d 533, 535 (Miss. Ct. App. 2010) (internal quotation marks omitted). The Mississippi Court of Appeals thus upheld the trial court's finding of probable cause. *Id.*

determining carelessness under the careless-driving statute." *See Henderson v. State*, 878 So. 2d 246, 247 (Miss. Ct. App. 2004) (finding probable cause where a vehicle almost hit a curb, stopped at a stop sign, and then almost hit another curb in the early morning hours). No "wide-ranging" factors are present here: at most, there is one bump of the fog line. *Cf. Saucier*, 858 So. 2d at 934–35 (comparing case law and noting "there was not a one-time and brief drifting across the painted stripe separating lanes . . . but [] multiple intrusion[s] across the dividing stripe on the highway," and that "[t]he frequency of the failure to maintain the proper lane suggests a greater degree of risk and carelessness," as does crossing "into the lane for traffic going the opposite direction").

Although we employ de novo review of the legal question, determining what constitutes "due regard for the width . . . and use of the streets" and what it means to "drive[] any vehicle in a careless or imprudent manner" requires consideration of a wide range of factors, including some that are inherently based on factual findings. MISS. CODE ANN. § 63-3-1213; *see also Henderson*, 878 So. 2d at 247. In analogous contexts, we have allowed district courts to assess a defendant's conduct in light of the pursuing officer's actions. Here, the trooper's vehicle was stationed alongside the van, potentially very close to the centerline. Our own case law shows that this court may account for the effect of an officer's presence immediately behind or beside a defendant's vehicle when analyzing that defendant's driving behavior. *Cf. United States v. Rivera-Gonzalez*, 413 F. App'x 736, 739–40 (5th Cir. 2011) (unpublished) (noting that "when the officer's actions are such that any driver, whether innocent or guilty, would be preoccupied with his presence, then any inference that might be drawn from the driver's behavior is destroyed," and that even "abnormal turn-signaling might qualify as innocent" because "[e]ven an innocent driver wondering why

No. 14-60149

a Border Patrol car is following for several miles might forget to turn off a turn signal." (citations and internal quotation marks omitted)).[5]

To the extent that the majority opinion concludes that the district court's findings are unclear, the proper remedy is a remand for clarification, not reversal. *See Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 386, 388 (2008) (vacating with instructions to remand to the district court for clarification, holding that "[w]hen a district court's language is ambiguous, as it was here, it is improper for the court of appeals to presume that the lower court reached an incorrect legal conclusion. A remand directing the district court to clarify its order is generally permissible and would have been the better approach in this case"); *cf. Gomez-Moreno*, 479 F.3d at 354. As it stands, I conclude that the record and the district court's findings are sufficiently clear to distinguish this case from every other Mississippi case that has condoned a traffic stop for careless driving based on a driver's interaction with the fog line (and more). Reasonably interpreting carelessness and what it means to give due regard for the width and use of the road in light of a wide range of factors, I disagree with holding that an officer can stop a van in Mississippi simply for bumping the fog line one time. Such a holding to reverse a district court expands the definition of careless driving under § 63-3-1213 beyond the boundary Mississippi courts have drawn.

---

[5] Although *Rivera-Gonzalez* is not "controlling precedent," it "may be [cited as] persuasive authority." *Ballard v. Burton*, 444 F.3d 391, 401 n.7 (5th Cir. 2006) (citing 5TH CIR. R. 47.5.4). For cases where this court has taken account of an officer's presence in examining a defendant's driving behavior, *see also United States v. Zapata-Ibarra*, 212 F.3d 877, 882–83 (5th Cir. 2000) (finding that deceleration of a vehicle and its swerving within its lane only slightly supported reasonable suspicion when the vehicle did so in reaction to a rapidly-approaching police car that had activated its high-beam lights); *United States v. Jones*, 149 F.3d 364, 370–71 (5th Cir. 1998) (finding that a driver's act in drifting off the roadway did not give rise to reasonable suspicion in the totality of the circumstances, because the driver was glancing back at the officer, who was tail-gaiting the driver).

No. 14-60149

Because the district court did not err in concluding that the trooper lacked lawful justification to stop Rosales-Giron's van,[6] I would affirm the district court's suppression of evidence. Accordingly, I respectfully dissent from the judgment of the court reversing the district court.

---

[6] Of course, I agree with the majority opinion that the trooper's subjective intentions in making the traffic stop play no part in the probable cause analysis and that the district court should not have discussed them. *See Whren v. United States*, 517 U.S. 806, 813 (1996) ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis."); *United States v. Cole*, 444 F.3d 688, 689 (5th Cir. 2006). Again, if we are concerned about whether this mention of subjective intent affected the district court's conclusions, we should remand, not reverse. *See Sprint/United Mgmt. Co.*, 552 U.S. at 386, 388.